## Tome v. Dubois.

1. Conversion of personal property by a wrongdoer does not deprive the owner of the power of making a valid sale of it. He may, if he sees fit, waive the tort, and affirm the wrongful act; and in that event a purchaser from him, first giving due notice of the transfer, may demand the property, and in case of refusal maintain trover for the wrongful retention of it. Such a sale is not a sale of a right of action, but a sale of the property itself.

2. Where the owners of saw-logs which in a freshet had floated far down a river, and coming thus as waifs to persons along the river, had been saved and sawed by them into boards, affirmed the acts of such persons in saving and sawing them, the salvors, on a claim by the owners to the value of the lumber, are entitled to just compensation for their work and expenses in saving it.

3. Refusal to grant specific prayers of a party for instruction is not error; the substance of the requested instructions being embraced in the instructions actually given.

Error to the Circuit Court for the District of Maryland; the case, as stated in the brief of counsel, and assumed by this court, being in substance thus:

Dubois & Lowe brought trover against Tome, Shure & Abbott to recover damages for the conversion by them of certain saw-logs, and certain planks, which Dubois & Lowe alleged to be their property.

At the trial of the cause, evidence was offered on the part of the plaintiffs, that on September 30th, 1861, several booms on the Susquehanna River were carried away by a freshet, and that a large quantity of logs for lumber were swept down the river; that telegrams were at once sent to the postmasters at Port Deposit and Havre de Grace, towns on the lower part of the river, requesting them to have the logs caught and saved for the owners, and that under such notices, the defendants caught and saved a quantity of the logs, and at once began to saw them into lumber. Evidence was also offered, that a few days after the freshet, the owners of the logs appointed a committee of three persons to go down the river, and settle with the persons who had saved any portion of the logs, and with full authority to sell the same; that on

the 7th or 8th October, 1861, the committee went to the saw-mill of the defendants, about seven miles from Havre de Grace, and saw some of the logs there; that the committee offered to sell to the defendants all the logs between Safe Harbor Dam and Havre de Grace, which included the logs then in the possession of defendants, but the parties could not agree as to the terms of sale; that the defendants were then engaged in sawing the logs, and had prior to that time sawed some of them, and that the committee prohibited all further sawing thereof; that they estimated the lumber which had been sawed at from 40,000 to 200,000 feet; that they made several visits to the mill of the defendants, and on their last visit, which was in December, 1861, and was for the purpose of ascertaining and measuring the whole amount, there were, in their judgment and by their measurement, 400,000 feet of sawed lumber, and 100,000 feet in logs. Evidence was also offered, that on the 26th October, 1861, the plaintiffs bought all of the logs from Safe Harbor to Havre de Grace from the committee, and settled with them therefor; that on the next day the plaintiffs gave notice to Tome (one of the defendants) of the purchase, and he having refused to pay them for the logs which had been sawed, they demanded possession of all the lumber sawed and unsawed in the defendants' possession, and prohibited the sawing of any more, but he denied their ownership, alleging that the logs and lumber had not been scaled and delivered to them; and that after the logs had been scaled, and the quantity of lumber estimated by the committee in December, 1861, the plaintiffs made another application to the same defendant without success, he referring them to Shure (a co-defendant in this case), of whom they had made repeated demands, and received repeated refusals. The plaintiffs also gave evidence, that the logs when sawed, were worth from $13 to $16 per thousand feet.

On the part of the defendants, evidence was offered that after the receipt of the notices by telegraph, they commenced to save the logs as they were brought down by the freshet, and that with the expectation of becoming the purchasers

of the logs, they sawed and converted the same into lumber
as fast as they were saved, and directed the foreman at their
saw-mill to keep an account of the same; that they had con-
verted about twenty-two logs into lumber, when the com-
mittee came to the mill, and objected to the manner of keep-
ing the account, and gave directions as to the keeping of the
same in a different manner; that of the logs when so sawed
into lumber they had sold three canal-boat loads on the 18th
and 25th of October, 1861, and received the money therefor,
at the value of $11 per thousand feet; that about 780 logs
were the whole amount so recovered and sawed by them,
and that from the moment they heard of the sale of the logs
by the committee to the plaintiffs, they ceased either to catch
or saw the logs; that five of the logs sawed would make a
thousand feet of lumber; and that it was worth $3 per thou-
sand to saw it, and $5 per thousand to save the logs. The
defendants also proved, that when called on by the com-
mittee after they had made their final estimate and measure-
ment of the lumber, for an account of the logs so caught and
manufactured into lumber, they expressed a willingness to
furnish such account, and to pay therefor to the committee,
for themselves or for the owners, but would not furnish an
account for nor settle with the plaintiffs, whom they refused
to know in the matter.

The defendants requested the court to instruct the jury as
follows:

1. If the jury shall find that the logs in question were the
property of the several parties shown by the evidence to have
constituted the committee to dispose of the same, and that the
defendants took the logs into their possession, and sawed the
same into boards without the consent of the owners, then the
taking and sawing were a tortious conversion of the logs, for
which the defendants became responsible to the original owners
in trover and the plaintiffs are not entitled to recover in this
action, notwithstanding the jury shall also find that after the
conversion, the plaintiffs purchased all the former owners' inter-
est in the logs.

2. That if the jury shall find for the plaintiffs, the measure of

damages is the value of the logs at the time and place of the conversion.

3. If the jury shall find that the logs in question were saved by the defendants from the freshet for the benefit of the owners when they should appear, and then shall further find that being perishable, they were sawed by the defendants also for the benefit of whom it might concern, then the measure of damages will be the value of the logs at the time and place they were so saved, or the value of the lumber, deducting therefrom the cost of saving and sawing.

4. If the jury find from the evidence that the logs were saved in conformity with the instructions of those who were the owners thereof at the time of the freshet, and that they or so many thereof as were saved were thereafter sawed into plank, with the sanction of the committee representing the owners, then the jury, in estimating the value of the logs and lumber at the time of the demand and refusal, are to allow a reasonable sum as compensation for saving such logs, and sawing the same into plank.

But the court rejected the prayers presented by the defendants, and instructed the jury:

If the jury find from the evidence in this case that the saw-logs and planks found by the witnesses at defendants' mill were saw-logs that had come down the river during the freshet, belonging to the owners represented by the committee, or plank sawed from the logs, and that the logs and plank were sold by the committee to the plaintiffs in this case, and that subsequently to the purchase the plaintiffs demanded the same from the defendants, and that the defendants refused to give up the same to the plaintiffs, then the plaintiffs are entitled to a verdict for such sum as the jury may find the logs and plank to have been worth at the time of such demand and refusal at the mill of the defendants, with interest from the time of such demand, after deducting whatever cost the jury may find the defendants incurred for the saving of the logs, and also the cost of sawing; if the jury shall further find that the saving and sawing were done at the request or by the sanction of the owners or the committee.

Exceptions were duly taken by the defendants to the refusal of the court to instruct the jury as requested and also to the instructions given by the court; and the refusal and the instructions given were now the matters in question here.

' *Mr. G. H. Williams, for the plaintiff in error*, contended, 1st, that if the sawing of the logs (which was a necessary part of their saving) was a tortious conversion, then the right of action therefor was not assignable,* and also that the instruction tended to confuse the jury by leaving to them to find or not a fact which was not disputed, viz., that at least the logs were saved under instructions. That the defendants were not, at all events, trespassers *ab initio ;* and that if the plaintiffs could not sue for so many of the logs as were converted previous to their purchase, there was no separation of the residue, or delivery by the former owners, for which trover would lie.†

*Mr. J. N. Steele, contra.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Careful attention to the facts of the case, as given in the statement prepared as a part of the opinion of the court, will very much facilitate the investigation, as it discloses very fully the substance of the entire transaction, the order of the events and the pretensions of the respective parties.

Original ownership of the logs is not a question in the case, and the present parties conceded that the booms containing the logs were broken by the freshet, and that the logs, in spite of any efforts of the owners, were carried away by the current, and floated down the river. Telegrams were sent by the owners making known their loss, and requesting the persons to whom they were directed to take measures in their discretion to save the logs, and it is with-

---

* Overton *v*. Williston, 31 Pennsylvania State, 160 ; Gardner *v*. Adams, 12 Wendell, 297 ; McGoon *v*. Ankeny, 11 Illinois, 558; Dunklin *v*. Wilkins, 5 Alabama, 199.

† White *v*. Wilks, 5 Taunton, 176 ; Shepley *v*. Davis, Id. 622.

out dispute that the defendants promptly engaged in the business, and saved the logs in controversy. Owning saw-mills, they immediately commenced to saw the logs, as they secured them, into planks. Other persons also lost logs by the same freshet, and the several owners appointed a committee of three persons to go down the river and, if possible, protect their interests, and to sell the logs if in their discretion it was thought best. Pursuant to that authority they went to the mills of the defendants, and offered to sell them the logs, sawed and unsawed, but the parties not being able to agree, the committee notified the defendants that they must stop sawing the logs into lumber. Unable to come to any satisfactory arrangement, the committee left and sold the whole lumber, logs and planks, to the plaintiffs, who paid the consideration. Having become the owners, the plaintiffs went to the mills of the defendants, and failing to sell the lumber to them, or to come to any agreement with them, they demanded the lumber, logs and planks, and the defendants refusing to deliver the same, they instituted this suit in the Circuit Court.

Purchase by the plaintiffs was made on the twenty-sixth day of October, 1861, as appears by the evidence. Refusal of the defendants to deliver the lumber as demanded, was placed upon the ground that they, the defendants, were responsible to the former owners, and they denied that the ownership was in the plaintiffs, as the logs and planks had not been scaled and delivered to them since the purchase.

Theory of the first prayer for instruction is, that the defendants are not liable in this action, because they took the logs into their possession, and sawed the same into planks while the logs were the property of the original owners. Stated in other words, the proposition is, that the logs, at the time of the conversion, were the property of the vendors of the plaintiffs, and the defendants contend that, having tortiously converted the lumber to their own use, before the sale, they are not liable to the plaintiffs as the purchasers. Delivery was not essential, as it is well settled that when the terms of the sale are agreed on, and the bargain is

struck, and everything the seller has to do with the property is complete, the contract of sale becomes absolute between the parties without delivery, and the property and risk vest in the purchaser.*

Owners of personal property are not obliged to treat every act of a third person who invades their right of property or possession as constituting a tortious conversion of the property, but they may, if they see fit, waive the tort, and in that state of the case, they may sell the property and convey a good title, and their vendee may, upon demand and refusal, maintain trover.†

Such a defence of a wrongdoer is not entitled to any special favor, and we concur in the remarks of Judge Story, that there is no principle of law which establishes that a sale of personal property is void because the property was not in the possession of the rightful owner at the time the sale was made. Under such circumstances, the sale is not a sale of a right of action, but a sale of the thing itself, and good to pass the title against every person not holding the same in good faith for a valuable consideration without notice, and *à fortiori* against a wrongdoer.‡

Conversion relied on by the plaintiffs is not because the defendants intermeddled with the logs without authority, or that they refused to deliver the lumber when it was demanded by the committee. They could not rely on those acts with any hope of success, as the plaintiffs, at those dates, had no title to the lumber, which at that time was vested in their vendors. But they subsequently became the purchasers, and the proofs show that they twice demanded the lumber after the defendants knew that the plaintiffs had become the purchasers.

---

* Leonard et al. v. Davis et al., 1 Black, 483; 2 Kent's Com. (11th ed.) 492.

† Hall v. Robinson, 2 Comstock, 293; Cartland v. Morrison, 32 Illinois, 190; 2 Greenleaf's Evidence, 108; Hambly v. Trott, Cowper, 372; Cravath v. Plympton, 13 Massachusetts, 454; Webber v. Davis, 44 Maine, 147.

‡ Brig Sarah Ann, 2 Sumner, 211; Carpenter v. Hale, 8 Gray, 157; Zabriskie v. Smith, 3 Kernan, 322; Morgan v. Bradley, 3 Hawks, 559.

Third prayer for instructions corresponds with the proofs, which show that the defendants persistently denied the title of the plaintiffs, and claimed the right to hold the lumber, sawed and unsawed, for the benefit of the original owners, which is a theory without merit, and which requires no further explanation. Claiming no title to the property, they refused to deliver it, because, as they insist, they had taken away from the original owner the power to sell, by tortiously converting it to their own use. Even at the trial they admitted that the property did not belong to them, but insisted that the purchasers acquired no title for the reasons already suggested. Claim is also made in argument that the defendants had sold a part of the lumber, but it is too late to raise any such question in this court, as none such was raised at the trial, or reserved in the bill of exceptions.

Proper exceptions were also taken to the refusal of the court to give the second and fourth prayers presented by the defendants, but the exceptions cannot be sustained, as the substance of both is embraced in the instructions given by the court. Purport of those prayers were that the defendants were entitled to a reasonable sum for the cost of saving and sawing the logs. Instructions of the court to the jury were, that they should deduct from the value of the lumber the cost of saving the lumber, and also the cost of sawing, which is all the defendants could demand in any view of the facts. Valid objection cannot be taken to the qualification annexed to that instruction, as the testimony was without conflict that the defendants had saved the logs and manufactured a part of them into plank, and there is no proof that the owners or the committee made any complaint that the work had been done without authority. Amount of the verdict affords satisfactory evidence that the finding was correct. The residue of the instruction is unexceptionable and there is no error in the record.

JUDGMENT AFFIRMED WITH COSTS.