# Campbell *v.* Woodstock Iron Co.

*Bill in Equity by Stockholder, for Account and Distribution of Assets of Defunct Corporation.*

83　351
99　385

83　351
138　572

1. *Mortgage or pledge of stock.*—A written instrument, by which a stockholder in a private corporation "transfers and assigns his interest" therein as security for a debt, and authorizes the transferree and his assigns "to sell and transfer said interest so as to satisfy and dis-

[Campbell v. Woodstock Iron Co.]

charge said debt at maturity," is not a pledge of the stock, nor a mere equitable lien or charge, but is a mortgage, and passes the legal title to the stock as between the parties, without any transfer of the certificates, or of the stock itself on the books of the corporation.

2.   *Same; assignment, and sale by assignee.*—The power of sale in such instrument passes with it to an assignee, by its own terms, if not by force of the statute (Code, § 2198) ; and if the assignment is accompanied with a written power of attorney, authorizing the person so appointed to transfer the stock, a sale and assignment by him, which purports to be made "by virtue of the authority conferred by the annexed letters of attorney," is a valid execution of the power contained in the assignment itself.

3.   *Sale of stock by assignee, under power in mortgage.*—A sale of stock in a private corporation, under a power contained in a mortgage, cuts off the mortgagor's equity of redemption, provided he was informed of the intended sale, and sanctioned it.

4. . *Proof of handwriting.*—A witness who has corresponded with a party, sending by mail letters directed to him, and receiving replies purporting to be written by him, may testify as to the handwriting or signature of the letters, though he has never seen the party; and his testimony is *prima facie* sufficient to establish the genuineness of the signature, when the party himself, being competent to testify, does not deny it

5.   *Power of sale construed.*—A power of sale contained in a mortgage of stock, authorizing the mortgagee or his assigns "to sell and transfer the same *so as to satisfy and discharge* said debt at maturity," is not limited to a sale for the full amount of the debt.

6.   *Conversion, or wrongful sale of stock, by assignee; limitation of suit.*—A wrongful and tortious sale of stock in a private corporation, by an assignee of a mortgage, is a conversion, for which an action of trover will lie; and such action being barred in six years (Code, § 3226), a court of equity will not grant relief against it after that time has elapsed.

7.   *Same; waiver of irregularities.*—If such wrongful sale is made with the consent, and by the direction of the mortgagor, this is a waiver of all irregularities, and renders the sale equivalent to a formal foreclosure.

APPEAL from the Chancery Court of Calhoun.

Heard before the Hon. S. K. MCSPADDEN.

The bill in this case was filed on the 26th December, 1883, by Richard L. Campbell, as a stockholder in the Oxford Iron Company, a private corporation, against the said corporation, and against the Woodstock Iron Company, Alfred L. Tyler, and others; and sought an account and distribution of the assets of said first named corporation, whose corporate existence had (it was alleged) expired by limitation, and to hold the other defendants liable for the rents and profits of its property in their possession.   The said corporation was organized under the general statutes (Code of 1853, §§ 1473-75), in November, 1862, "for the purpose of mining iron ore, and manufacturing pig-iron;" its capital stock being $24,000, which was divided into twelve

shares. The complainant was one of the four original stock-holders, and owned two shares of stock; and by written instrument dated December 24th, 1872, he transferred these shares, or his interest in the corporation, to Thos. K. Ferguson. This instrument, a copy of which was made an exhibit to the bill, was in these words: "I, Richard L. Campbell, of Pensacola, Florida, do hereby transfer and assign to Thos. K. Ferguson, of Selma, Alabama, my one-sixth interest in the Oxford Iron Company, of Calhoun county, Alabama, as security for promissory note for $5,971.02, made by me, dated 5th December, 1872, and payable to the order of Thos. K. Ferguson, on the 1st January, 1874; and I do hereby authorize and empower the said Thos. K. Ferguson, and his assigns, to sell and transfer my said interest so as to satisfy and discharge said note, unless I shall sooner do so, at maturity. In testimony whereof," &c. On the 26th December, 1872, Ferguson transferred Campbell's note, with this written instrument, to the Deposit Savings Association of Mobile, as security for money borrowed, or to be borrowed; and at the same time executed and delivered a power of attorney, also made an exhibit to the bill, in these words: "I do hereby appoint and constitute L. C. Fry, cashier, my attorney to transfer the stock of R. L. Campbell in the Oxford Iron Company. This is done to secure the Deposit Savings Association of Mobile, of which L. C. Fry is cashier, for any moneys that may be due them by myself, or by Thos. K. Ferguson & Co. Witness my hand," &c.

The Woodstock Iron Company was organized under the general statutes, in May, 1872, for the purpose of "manu-facturing pig-metal and other products of iron ore, and making sale thereof, connecting with said business all such operations as are usual and incidental thereto;" and it commenced business with a capital of $75,000, acquiring a large body of lands near the lands of the Oxford Iron Company, and purchasing the greater part of the stock of that corporation. On the 23d April, 1874, said L. C. Fry executed to said Woodstock Iron Company a written assignment and transfer, which was also made an exhibit to the bill, in these words: "For valuable consideration, and by virtue of the authority conferred upon me by the annexed letters of attorney, I, L. C. Fry, cashier of the Deposit Savings Association of Mobile, Alabama, do hereby transfer and assign unto the Woodstock Iron Company, of Calhoun county, Alabama, the one-sixth interest in the stock of the Oxford Iron

23

Company formerly owned and held by R. L. Campbell, and more recently by Thos. K. Ferguson; and I do hereby vest in the said Woodstock Iron Company the title to said stock, as fully, to all intents and purposes, as I have power to convey the same. In witness whereof," &c.

The bill alleged that no transfer of the complainant's stock in the Oxford Iron Company had ever been made on the books of the corporation, but the same had always stood in his name; insisted that no valid sale of the stock had ever been made under his assignment to Ferguson; that Ferguson's power of attorney to Fry was unauthorized and invalid, and that Fry's assignment to the Woodstock Iron Company was not a valid exercise of the power to sell; and claimed, on these grounds, that the complainant was still a stockholder in the first corporation, and was entitled to relief as to the matters alleged and complained of. An answer was filed by the Oxford Iron Company, admitting the material allegations of the bill, and raising no issue with the complainant. The Woodstock Iron Company filed a demurrer to the bill, for want of equity, which the chancellor overruled; and then filed an answer, alleging and insisting that its purchase of the complainant's stock was a valid execution of the power of sale contained in his mortgage to Ferguson, and was made with complainant's approbation and assent, after correspondence and consultation with him, and that his claim to relief was barred by *laches* and the statute of limitations.

On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

R. L. CAMPBELL, and STRINGFELLOW & LEGRAND, for the appellant.—(1.) The complainant was one of the original stockholders of the Woodstock Iron Company, and his name still stands on the books of the corporation, as the owner of the stock for which he subscribed; and this gives him a right to the relief sought by the bill, unless he has surrendered, waived, transferred, or forfeited his right.

(2.) The instrument executed by complainant to Ferguson was not a pledge, nor did it convey any legal title to the stock.—Rev. Code, 1867, § 1783; *Gr. Insurance Co. v. Kamper*, 73 Ala. 325; *Nabring v. Bank of Mobile*, 58 Ala. 204; *Insurance Co. v. Savings Bank*, 63 Ala. 585; *Jackson v. Rutherford*, 73 Ala. 155; *Sims v. Canfield*, 2 Ala. 555; *Olis v. Gardner*, 105 Ill. 436; *Richardson v. Abendrath*,

[Campbell v. Woodstock Iron Co.]

43 Barb. 162; Colebrook on Col. Securities, § 273; *Winslow v. Fletcher*, 50 Amer. Rep. 122; Lowell on Trans. Stock, §§ 88, 63; *Chambers v. Mauldin*, 4 Ala. 477; *Foster v. Goree*, 5 Ala. 424.

(3.) Ferguson could not transfer to the Mobile Savings Association, or to any other person, any greater interest in the stock, or any better title to it, than he himself had; and having assigned complainant's note and equitable mortgage to said association, his authority over the stock ended, and his power of attorney to Fry was a nullity.

(4.) If the power of attorney to Fry was valid for any purpose, it did not authorize him to sell any greater interest in the complainant's stock than passed to said association by Ferguson's transfer. To authorize him to sell and transfer complainant's stock, to pay or secure Ferguson's indebtedness, was a breach of the trust on which Ferguson held it; and the purchaser was chargeable with notice of such breach of trust.—Perry on Trusts, § 242; 1 Story's Equity, § 173; *Shaw v. Spencer*, 100 Mass. 382; *Croker v. Croker*, 31 N. Y. 507; *Duncan v. Jordan*, 15 Wall. 165.

(5.) The sale by Fry, or attempted sale, shows on its face that it was made under the power of attorney from Ferguson, and was therefore void. If it is to be referred to the power contained in complainant's transfer to Ferguson, it is equally void; for that only authorized a sale "so as to satisfy and discharge said note," while the proof shows that only $2,500 was paid as the consideration, and that the note itself was also transferred to the purchaser, and is still held as a subsisting obligation against the complainant.—2 Co. Lit. 329; *Ransom v. School District*, 17 Allen, 128; *Carter v. Chaudron*, 21 Ala. 72; 2 Perry on Trusts, § 511, p. 39; 2 Sugden on Powers, 474, mar.; *Sawyers v. Baker*, 77 Ala. 46; *Sloan v. Frothingham*, 65 Ala. 592; Tiedman on Realty, § 36.

(6.) The Oxford Iron Company, the original corporation, held its property in trust for its creditors and stockholders; and the Woodstock Iron Company, under the facts proved, is chargeable as a trustee *in invitum*.—*M. & W. P. Railroad Co. v. Branch*, 59 Ala. 139; 1 Mor. Corp., § 237; 1 Perry on Trusts, § 242; *Pomfret v. Windsor*, 2 Vesey, 481; 3 Atk. 729; 2 Ventr. 329; 2 Pom. Equity, §§ 1045, 1048, 1079; *Moody v. Bibb*, 50 Ala. 245; *Corbett v. Carroll*, 50 Ala. 315; *Lee v. Lee*, 67 Ala. 406; *Werborn v. Austin*, 77 Ala. 381; *Robinson v. Pebworth*, 71 Ala. 240,

[Campbell v. Woodstock Iron Co ]

(7.) The attempt to prove complainant's assent to the sale to the Woodstock corporation, based on alleged letters written by him, must fail for want of legal evidence. 1 Greenl. Ev., § 577; *Railroad Co. v. Jay*, 65 Ala. 116; *Calhoun v. Thompson*, 56 Ala. 170; 59 Texas, 411; 60 Texas, 690; 92 N. Y. 621; 48 Ala. 493; Whart. Ev., § 147; 16 Kans. 212; 6 Serg. & R. 420.

(8.) The statute of limitations is no defense to the suit, and *laches* can not be imputed to the complainant.—2 Pom. Equity, § 817; *Kennedy v. Kennedy*, 2 Ala. 604; 1 Perry on Trusts, § 230; *Sayre v. Elyton Land Co.*, 73 Ala. 103; Hill on Trustees, 266, mar.; 2 Ind. 321; *Holt v. Wilson*, 75 Ala. 65; 2 Perry on Trusts, § 863; *Nininger v. Norwood*, 72 Ala. 277; *Proskauer v. Savings Bank*, 77 Ala. 257; *McCarthy v. McCarthy*, 74 Ala. 554.


JOHN B. KNOX, and CALDWELL & CALDWELL, *contra*. The complainant shows no right to relief as a stockholder of the Oxford Iron Company; because he has parted with all the interest he ever had in its stock or property. His transfer to Ferguson was operative as a mortgage, and passed the legal title; leaving nothing in the complainant, except an equity or right of redemption on payment of his note.—Jones Chat. Mortgages, §§ 4–7. The power to sell or foreclose passed to an assignee, by the words of the instrument, if not by the statute; and the power of attorney to Fry was but the appointment of a person to execute the power as agent. Code, § 2198; *Buell v. Underwood*, 65 Ala. 285; Jones Chat. Mortgages, §§ 501–02.

The sale to the Woodstock Iron Company was a valid and regular execution of the power; and having been made with the consent of the mortgagor, which would be a waiver of all irregularities, if any intervened, his equity of redemption was completely foreclosed.—*Dickinson v. Nat. Bank*, 129 Mass. 279; *Bryant v. Lumber Co.*, 3 Nev. 313; Jones Chat. Mortgages, § 707; *Talman v. Smith*, 39 Barb. 390; *Harris v. Lynn*, 25 Kans. 281; 75 Ind. 356; *Waite v. Dennison*, 51 Ill. 319; *Willoughby v. Comstock*, 3 Hill, N. Y. 389; *Erwin v. Lowry*, 7 How. 172; *McCaa v. Woolf*, 42 Ala. 389; *Morris v. Hall*, 41 Ala. 510; *McConnell v. People*, 71 Ill. 481; *Bradley v. Chase*, 22 Maine, 511; 122 Mass. 129.

If the complainant ever had any right to complain of the sale, it has been lost by his *laches*, and he is barred by the statute of limitations.—*Smith v. Clay*, Amb. 645; *Wood v.*

[Campbell v. Woodstock Iron Co.]

*Carpenter*, 101 U. S. 135; *Ashurst's Appeal*, 60 Penn. St. 290; *New Albany v. Burke*, 78 U. S. (11 Wall.) 96; *Hollingsworth v. Fry*, 4 Dall. 345; 28 Miss. 594; *Kane v. Bloodgood*, 7 John. Ch. 90; *Humphreys v. Terrell*, 1 Ala. 650; *Sims v. Canfield*, 2 Ala. 555; 21 Wall. 503; *Carr v. Hilton*, 1 Curtis, 390; *Gilmer v. Morris*, 80 Ala. 80.

SOMERVILLE, J.—The ground upon which the appellant's right to file the present bill is based, is the alleged ownership of two shares of corporate stock in the Oxford Iron Company, of the par value of two thousand dollars each, which are now claimed by the Woodstock Iron Company, one of the defendants to the bill in the lower court. It is insisted by the defendant, that the complainant's title to this stock has been divested by sale under a mortgage executed by him to one Thomas K. Ferguson, on December 24th, 1872, to secure a debt of nearly six thousand dollars evidenced by complainant Campbell's promissory note, payable January 1st, 1874. The first inquiry is, whether this contention on appellee's part is supported by the evidence.

There is no difference of opinion between counsel, as to the general nature of the instrument executed by Campbell to Ferguson. It is admitted to be a mortgage, and not a pledge, although it is denied by complainant that it conveys to the mortgagee, or his assigns, the legal title of the stock. It purports to "transfer and assign" the stock, as security for the complainant's debt, and authorizes the mortgagee, Ferguson, or his assigns, to sell or transfer it "so as to satisfy and discharge" the mortgage debt. Not only is this instrument a mortgage, but it contains words sufficiently apt to operate as a transfer of the legal title of the stock as between the mortgagor and mortgagee. It is not a mere lien, or equitable charge. It shows an intention to *transfer* the mortgage property as security for a debt, and imports a conveyance of title in the nature of a condititional sale. *Jackson v. Rutherford*, 73 Ala. 155; Jones on Chat. Mort., §§ 8-9. There is absent from the transaction one necessary element of a pledge, which is possession, actual or symbolic, of the thing which is the subject of the pledge.

That stock of this character may be mortgaged, as well as pledged, admits of no doubt whatever, at least in this State. *Gilmer v. Morris*, 80 Ala. 78, 85; Code, 1876, § 2044; Cook on Stock and Stockholders, §§ 463, 464. And this may be done, *as between the parties*, without a transfer of the certifi-

cates of stock, or without a transfer of the stock itself on the corporation books. The certificate does not constitute the stock, any more than a promissory note does the debt which it describes. It is the mere evidence of its existence and ownership.—*Frenkel v. Hudson*, 82 Ala. 158, 161. So, there is nothing in the statutes under which the corporation in question was organized, which invalidates any sale or mortgage of stock, as between the parties to such transaction, without a transfer on the books of the company. If in proper form, and otherwise unobjectionable, such a conveyance is good and valid between the parties, although it may be void as against *bona fide* creditors, or subsequent purchasers without notice, and although, as against the corporation itself, it may convey only an equitable title, conferring no right to vote, draw dividends, or other like incidents of ownership. It is, in other words, effectual against the transferror, whoever else may complain.—*Fisher v. Jones*, 82 Ala. 117, 122; Code, 1876, § 2044; *Duke v. Cahaba Navigation Co.*, 10 Ala. 82; Cook on Stock and Stockholders, §§ 374, 379, 358, 308; 2 Addison Contr. (Morgan's Ed.), p. 283, note 1.

It is further contended by appellant, that the execution of the power of sale conferred by the mortgage was void. This instrument, executed, as we have said, by the complainant, Campbell, in December, 1872, authorized a sale under the power to be made by the mortgagee, Ferguson, or his assigns. The power of sale is thus expressly made to follow the mortgage, into the hands of any assignee, which it would perhaps do under the statute, however, even in the absence of any express stipulations.—Code, 1876, § 2198. Ferguson assigned the mortgage and note to the Deposit Savings Association of Mobile, and appointed its cashier, one L. C. Fry, to exercise the power of sale. As the assignee had the power to make the sale through its agents, the only way a corporation can act, the appointment of Fry for this purpose, and by its consent, impliedly constituted him the agreed agent of both Ferguson and the Deposit Savings Association, to make such sale. The sale was made by Fry in April, 1874, under the authority of what he designates "the annexed letters of attorney." This may reasonably be construed to have reference to the power conferred by Ferguson, in his written appointment of Fry, or to the power conferred by Campbell, which passed with the assignment of the mortgage, first to Ferguson, and then from him to the

Deposit Savings Association, for which Fry was acting. If, therefore, we admit that a reference of the act to the former power destroys the validity of the sale, and to the latter upholds it as valid, it is our duty to refer it to the one that upholds, and not to the one that destroys. The law leans against any construction of an instrument which would render ineffectual the attempted execution of a power contained in it.—*Gindrat v. Montgomery Gas-Light Co.*, 82 Ala. 596; s. c., 2 Southern Law Rep., 327; *Matthews v. McDade*, 72 Ala. 377.

These views lead to the conclusion, that the sale made under the power cut off the complainant's equity of redemption, provided he was informed of the intended sale and sanctioned it, as is alleged by the appellee.—Jones on Chatt. Mortg., § 709; *Erwin v. Lowry*, 7 How. U. S. 172. The question recurs, did the complainant sanction this sale under the power which was made by the Deposit Savings Association, of Mobile, to the Woodstock Iron Company? The testimony of the witness Foote, bearing on this point, clearly establishes such consent on complainant's part, unless it was improperly admitted against the objections urged to it, which we shall presently consider. This consent was alleged to be contained in certain letters written by Campbell, in which he agreed that the stock should be sold to Noble for the Woodstock Iron Company, in consideration of the sum of twenty-five hundred dollars.

It is first objected, that the witness never saw Campbell write, and could not testify to the genuineness of the signature to the several letters purporting to have been written by him, which are shown to be in the same hand-writing. This objection was untenable, as it was shown that Foote had acquired a sufficient knowledge of the complainant's hand-writing, by an interchange of correspondence with him. He mailed one or more letters to Campbell, directed to his known place of residence, and received replies purporting to come from that place, and to be signed by him. This was *prima facie* sufficient evidence of the genuineness of his signature. It must, therefore, be both satisfactory and convincing, in the absence of any denial by the complainant of the authenticity of the letter in question.—Wharton on Ev. § 701; 1 Greenl. Ev. § 573 (a).

The next objection is, that the predicate was not sufficiently laid to authorize the introduction of secondary evidence of the contents of these letters. The testimony of Foote, in

[Campbell v. Woodstock Iron Co.]

our opinion, shows very satisfactorily the loss or destruction of these letters, with other correspondence of the bank, and a sufficiently diligent search for the same, aided by other corporate officers, and in the place where they would probably have been found had they been in existence. On this point we entertain no doubt.

In corroboration of the *status* of this stock, we have the sworn statement of the complainant himself, which we are forced to construe into an admission that, in September, 1875, more than a year after the mortgage sale, he had parted with his interest in this stock. In his deposition taken in the case of *Gunnels v. Heflin,* in that month and year, *after* stating who were stockholders in the Oxford Iron Company, including himself in the number, up to October, 1875, he says: "*Since then the stock has passed into other hands.*" The natural import of this declaration is, that the complainant had parted with the title to his stock. And we may add, that this admission derives additional force from the fact that it is unexplained by the complainant, who was a competent witness in this cause had he elected to testify.

There is, to our mind, no force in the suggestion, that the mortgage executed by complainant to Ferguson conferred a power to sell the stock only on condition that it should bring enough to satisfy the mortgage debt. The phrase "so as to satisfy and discharge said note," means nothing more than in order to, or for the purpose of satisfying and discharging the mortgage debt. The settled rule is to construe all such instruments most strongly against the grantor, in case of doubt or ambiguity.

These conclusions are fatal to any right of recovery on the part of the complainant, without regard to other questions raised, and justified the dismissal of the bill.

In addition to this view, if it be admitted that there were irregularities in the sale, which rendered the transfer of the stock tortious and wrongful, the mortgagee would be guilty of a conversion, for which trover would lie, as would also his vendee, the Woodstock Iron Company. And this right of action would be barred, at law, in six years from the date of the sale. A court of equity, following the law, would give no relief based on the transaction, but would also adjudge it to be barred by the statute of limitations.—*Gilmer v. Morris,* 80 Ala. 78. The relation of the complainant and the defendant company, as stockholders in the same insolvent corporation, is not that of trustee and *cestui que trust* toward

each other, so far as concerned the sale and purchase of this stock. And the facts of the case do not make it an exception to this principle.

But, if it be admitted that there were irregularities in the execution of the power, the proof is satisfactory that the sale of the property was made by the assignee of the mortgage, and through its agent, with the consent and direction of the mortgagor; and this, according to all the authorities, was a waiver of such irregularities, and was equivalent to a formal foreclosure of the equity of redemption.—Jones on Chat. Mortg. § 709, and cases cited on brief of appellee's counsel.

The decree is affirmed.

CLOPTON, J,, not sitting.