[Civil No. 705.   Filed January 30, 1901.]

[63 Pac. 757.]

CORA BRILL, as Administratrix of the Estate of James Rourke, Deceased, et al., Defendants and Appellants, v. WILLIAM CHRISTY, Plaintiff and Appellee.

1. LIVE-STOCK—TRANSFER—BILL OF SALE—VALIDITY OF—EVIDENCE— ACT NO. 6, SEC. 61, LAWS OF 1897, CONSTRUED.—Section 61, *supra,* provides that cattle running at large upon the range may be transferred by a sale and delivery of the marks and brands of such animals. It does not, however, prohibit the sale or transfer of live-stock in any other manner. *Held,* that the owner of an undivided interest in cattle running at large upon the range can transfer his interest the same as any other personal property, without delivery, by a bill of sale properly executed, acknowledged, and recorded.

2. SAME—MARKS AND BRANDS—REGISTRATION—CERTIFICATE—EVIDENCE OF OWNERSHIP OF BRAND BUT NOT OF CATTLE—ACT NO. 6, SEC. 50, LAWS OF 1897, CONSTRUED.—The statute, *supra,* makes the certificate of the registration of a brand on cattle competent evidence of registration of such brand and *prima facie* evidence of ownership. In an action against an administratrix to recover an un-

divided interest in cattle on the range, the title to the brand not
being in controversy, a certificate issued pursuant to the provisions
of statute, *supra,* is not competent evidence for the purpose of
showing that the title to the cattle is in the party in whose name
the brand is recorded.

APPEAL from a judgment of the District Court of the
Third Judicial District in and for the County of Maricopa.
Webster Street, Judge. Affirmed.

The facts are stated in the opinion.

Baker & Bennett, for Appellants.

C. F. Ainsworth, for Appellee.

DOAN, J.—An action was brought in the district court of
Maricopa County by the appellee, as plaintiff, to recover the
undivided one fourth of a band of cattle branded thus, ℞,
and for an accounting by appellants (the defendants) of their
dealings with said cattle, and for a division thereof, and the
delivery to the appellee of his alleged undivided one-fourth in-
terest therein. The complaint alleged that one William Roarke
was the owner of an undivided one-fourth interest in a certain
band of cattle, and that James Roarke, since deceased, was
the owner of the remaining three-fourths interest; that Wil-
liam Roarke conveyed his undivided one-fourth interest to
William James Roarke, who in turn conveyed the same to the
appellee herein; that, after the death of James Roarke, Cora
Brill qualified as administratrix of the estate of the deceased,
took possession of the entire band of cattle, and claimed title
thereto to be in the estate of the said James Roarke, deceased.
The answer of the appellants admitted the possession of the
cattle to be in the appellant Cora Brill, administratrix; de-
nied the ownership of the appellee, and his right to possession,
of the one-fourth interest in said cattle; and alleged the estate
of James Roarke, deceased, to be the owner of, and the appel-
lant Cora Brill, as administratrix of the said estate, to be
entitled to the possession of the entire band of cattle. Upon
the trial of the cause the plaintiff, to sustain his title, intro-
duced evidence to prove title in William Roarke to the one
fourth of the cattle in question, and offered in evidence an
instrument in writing executed by William Roarke to Wil-

liam James Roarke, acknowledged before a notary public in California, and recorded in Maricopa and Yavapai counties, Arizona, conveying to said William James Roarke an undivided one-fourth part of a certain band of cattle, together with their offspring, which band of cattle is known by the following brand, ℞, which said brand is duly recorded on the records of Yavapai County, and which said band of cattle was lately in the custody and charge of James Roarke, who died on February 26, 1898, at Phœnix; also one undivided one fourth of a certain band of horses, which said band was known by the same brand above set forth, and was likewise in the care and custody of said James Roarke at the time of his decease. Plaintiff also offered in evidence a bill of sale executed by William James Roarke to William Christy, the appellee herein, acknowledged before a notary public in Phœnix, Arizona, and recorded in Maricopa County, Arizona, selling and conveying to the said William Christy ''an undivided one-fourth interest in and to that certain band of cattle and horses known as the Roarke cattle and horses, and branded as follows, to wit, ℞, on the left hip of both horses and cattle.'' The case was tried to a jury. The counsel for the respective parties stipulated in open court that the jury return a special verdict upon the question submitted to them, ''Is the plaintiff, William Christy, the owner of the undivided one-fourth interest in the cattle described in the complaint?'' The jury returned a verdict saying, ''We, the jury, in answer to the question submitted to us, 'Is the plaintiff, William Christy, the owner of the undivided one-fourth interest in the cattle described in the complaint?' say, 'Yes.' '' The court thereupon gave judgment to the effect that the appellee, William Christy, was the owner of the undivided one-fourth interest in the cattle, and ordered an accounting, and a division thereof, and the delivery of the said one fourth, from which judgment and the denial of a motion for a new trial the defendants appeal, and assign as error: First, the court erred in admitting in evidence plaintiff's Exhibits A and B, the conveyances aforementioned; second, the court erred in rejecting defendants' Exhibit No. 1. The only question presented in the case is the admissibility in evidence of the three exhibits offered.

It is conceded that the band of cattle in question were run-

ning at large upon the range in Maricopa County, Arizona; that three fourths of the cattle rightfully belonged to the estate of James Roarke, deceased; that the administratrix of the said estate held possession of the entire band, claiming title thereto; and that Christy, the appellee herein, claimed title to the one-fourth interest through the conveyances above mentioned, from William Roarke to William James Roarke, and from William James Roarke to himself. Evidence was introduced, without objection on the part of the defendants, showing that at the time of the execution of the conveyance to William James Roarke, the grantor, William Roarke owned the one-fourth interest in the cattle that is now in controversy. Defendants objected to the introduction of plaintiff's exhibits in evidence for the reason that they purported on their face to be conveyances by bill of sale of certain cattle on the range; that they were not such instruments in writing as are provided for by the statute for the conveyance of cattle or brands of cattle upon the range, and consequently were immaterial and irrelevant. This objection does not in fact go to the instruments offered, but attacks the transactions they tend to prove, and is more plainly stated in argument by counsel in the words: "Under this statute a purchaser only acquires title to cattle upon the range by a compliance with its terms. A bill of sale to cattle ungathered and upon the range, unaccompanied by actual delivery, which bill of sale only purports to convey the cattle themselves, and not the brand, is ineffectual to convey title to either the brand or the cattle, just as much as a verbal sale would fail to convey title to real estate." The question is presented, Does act No. 6 of the Laws of 1897, termed the "Live-Stock Law," provide for the conveyance of cattle on the range by bill of sale without actual delivery? An examination of that act discloses no express provision of this character, and the question therefore arises, is such transaction dependent upon special statutory authority, or is it permissible under the general laws for sale of personal property, unless inhibited by special statute? The appellants contend that the law recognizes no power on the part of the owner to sell cattle, except that conferred by the act in question, whereas the appellee claims that the authority to sell is recognized at common law, and can be exercised in the usual method of conveying personal property, except

where otherwise provided by statute, and that, as the statute
does not provide any particular manner in which cattle such
as these in controversy should be sold, the owner could sell
and transfer the same in like manner as any other personal
property. In *Tome* v. *Dubois,* 6 Wall. 548, 18 L. Ed. 943, the
United States supreme court held that "in a sale of personal
property actual delivery is not essential, as it is well settled
that when the terms of the sale are agreed on, and the bar-
gain is struck, and everything the seller has to do with the
property is complete, the contract of sale becomes absolute
between the parties without delivery, and the property and
risk vest in the purchaser"; and, unless there is some re-
strictive statutory provision to prohibit it, a deed or bill of
sale, properly executed and acknowledged, attesting such sale
and transfer, would be competent evidence to establish the
same. In *Nance* v. *Barber,* 7 Tex. Civ. App. 111, 26 S. W.
151,—a case very similar to the one at bar,—the question was
whether a sale of certain cattle was valid. The sale had been
made by bill of sale, unrecorded, of one hundred and sixteen
head of cattle, which were, as the court held, running on the
range. No segregation of the cattle or delivery of them had
been made. The court said, referring to a statute almost
identical with ours: "In sales covered by this statute, it can-
not be doubted that, in order for the purchaser to acquire
title to the property, he must take a written conveyance, and
have the same duly recorded. But, in our opinion, the stat-
ute does not apply to the sale from Nance to the plaintiff.
By its terms it is limited to the transfer of live-stock as they
run in the range, by the sale and delivery of the brands and
marks. . . . Such transactions were commonly known as and
designated a 'sale of a mark and brand.' It is to these sales
that the statute in question refers, and, as it places restric-
tions upon the right of an owner to sell his property,—one
of the most valuable rights incident to ownership,—we do not
feel at liberty to extend its meaning to transactions that are
not embraced within its terms. . . . This was not a transfer
by sale of the marks and brands." Does the aforesaid act
No. 6 prohibit the sale or transfer of live-stock in the manner
here under consideration? An examination of the statute
shows conclusively that it does not. It makes special pro-
visions for using and recording brands and for holding and

disposing of live-stock in several instances, but these are pro-
visions for the benefit of the owner of live-stock, and only
affect the manner of holding, handling, branding, and trans-
ferring live-stock as therein provided, and do not affect the
general rights of owners of this class of property to sell or
transfer their live-stock in any other manner than those
therein specifically defined. The plaintiff's exhibits were
therefore properly admitted in evidence, under the general
rules of evidence, and were material and relevant, as they
tended to establish the fact in issue.

The second assignment of error alleges that the court erred
in rejecting the defendants' Exhibit No. 1, which was a cer-
tificate of the secretary of the live-stock sanitary board that
the brand on the left hip of cattle and on the left thigh of
horses "was duly recorded under the provisions of section 50
of act 6 of the nineteenth legislative assembly of Arizona, for
James Roarke, in the territorial brand-book No. 1, page 18,"
with the seal of the board attached. The defendants offered
this certificate in evidence for the purpose of showing *prima
facie* title to the cattle and brand mentioned in the certificate
to be in the party in whose name it was recorded. The plain-
tiff objected to the introduction of the exhibit for the reason
that it was not proper evidence of title; that it was incompe-
tent for the purpose as alleged by the party offering it, and
established no title whatever to the cattle in question in the
defendants, as against the plaintiff; and for the further reason
that it was a self-serving declaration,—which objection was
by the court sustained. The appellants claimed that under
the provision of section 50 of act No. 6 of the Laws of 1897
the certificate was admissible for the purpose of showing
*prima facie* title to the cattle to be in the estate of James
Roarke, deceased. Said section 50 provides that "at any
time before the first day of July, after the passage of this
act, it shall be the duty of the persons owning brands and
marks, to file the same with the said board and the said board
shall record the same in a book of brands and marks, and
shall furnish the owners certificates thereof under the seal
of the said board, free of charge, which said certificate shall
be competent evidence of the registration of such brands, and
*prima facie* evidence of ownership." If the ownership of
the brand or the fact of its registration was in controversy,

the provision quoted would be applicable; but, as we have already seen in the consideration of the former assignment of error, the title to the brand is not in controversy. The conveyance did not purport to be a transfer or conveyance of the brand. Neither is the registration of the brand an issue in the case. Section 50 applies solely to the requirement for and the manner of the registration of brands, the proper evidence of such registration, and the ownership of the brands thus registered, and does not deal with the cattle that may be in such brands, the mode of their transfer, or the evidence of their ownership. There is a very material difference between the certified copy of a record and the certificate of an officer to what a record contains. Under the general rules of evidence, a public record can be proven by a copy thereof duly certified to by the proper and legal custodian of the record, but the courts will not assume that the conclusions drawn by such officer from the inspection of the records are correct. A certificate, therefore, of an officer as to the contents of such public record, based upon his summary or recital of what it contains, is not evidence, except in such instances as such certificate may be expressly constituted legal evidence by statute. Jones on Evidence, par. 556; *Tessman* v. *Supreme Commandery,* 103 Mich. 185, 61 N. W. 261. While, therefore, section 50 of the said act constitutes the certificate of the registration of a brand competent evidence of such registration, and *prima facie* evidence of the ownership of such brand, it does not make such certificate either competent or *prima facie* evidence for any other purpose. Consequently, neither the registration nor the ownership of the brand being in question, the provision of section 50 would not constitute such certificate evidence in this case. Not being a certified copy of any record, it was not entitled to be admitted under the general rules of evidence, and it was therefore properly excluded. These being the only errors assigned, the judgment of the district court is affirmed.

Sloan, J., and Davis, J., concur.