**57 P. (2d) 1203**

**JENKINS v. REEVES.**

**No. 4111.**

Supreme Court of New Mexico.

April 13, 1936.

F. H. Ayers, of Estancia, and E. C. Warfel and H. S. Bowman, both of Santa Fé, for appellant.

T. J. Mabry, of Albuquerque, for appellee.

BRICE, Justice.

This is an appeal from a judgment of the district court of Santa Fé county in favor of the appellee (plaintiff below) in a replevin suit for possession of 363 head of horses. At the close of appellee's testimony the appellant moved for judgment upon grounds that will be stated in the opinion. This motion was overruled, and appellant declined to introduce testimony, whereupon judgment was entered for appellee.

J. B. Jenkins, husband of the appellee, sold to appellant some horses and took his note for the purchase price, secured by a mortgage on these horses and delivered them to the appellant. The mortgage was drawn by a friend of appellant's who in filling out a blank form erroneously placed Jenkins' name as mortgagor and appellant's as mortgagee. Jenkins was blind, but appellant discovered the error, called attention to it, and at the request of both parties the scrivener corrected it before the transaction was closed. After the appellant became possessed of the horses, he began systematically to dispose of them to defeat the debt. He sold a number of them in violation of the laws against the sale of mortgaged property; removed many from the county where they were located and mortgaged and offered to employ various people to scatter the horses so Jenkins could not find them. A few of the horses were gathered by Jenkins, but the appellant had scattered the horses in various counties so that only a few could be found for the purpose of sale. The horses were advertised and sold without being in the possession of Jenkins at the place of sale. The appellee bought the horses at this sale. Many of the horses had been traded or sold, including some 40 or 50 to Indians. Appellant discussed with various people the means of beating the debt and scattering the horses so they could not be found. The case shows a clear intent on the part of the appellant to defraud Jenkins out of his debt, by preventing him from getting possession of the horses.

It is first contended that the mortgage was invalid because it appears from its face that the names of the parties had originally been written with Jenkins as mortgagor and Reeves as mortgagee, and then changed making Jenkins mortgagee and Reeves mortgagor. The evidence shows that the error was discovered at the time the mortgage was prepared and at the request of appellant it was corrected. In the absence of evidence to the contrary, it will be presumed the correction was made before it was signed; but even if corrected after it was signed, it was appellant's act and he cannot complain. The weight of authority is that the mortgagor could have corrected such clerical error after delivery, though we do not pass on the question. See cases cited in annotation in 73 A.L.R. at page 652. It is stated in Lohman v. Reymond, 18 N. M. 225-235, 137 P. 375, 378: "The alterations appearing in the instrument held to evidence an assignment from Numa Reymond to George Lynch are not such as to affect its validity

or admissibility in evidence, the same not having been done by the parties to alter its meaning, but only by interlineation by the person who was acting as the friend of both parties, and who drew the original instrument at a time prior to his becoming interested in behalf of either party."

There is no merit in this contention.

The next contention is that the sale under which the appellee purchased the horses is void because it was made without having the horses present. The evidence shows without contradiction that the appellant was disposing of some of the mortgaged property, and concealing others so they could not be found; that he employed, or attempted to employ, various persons to assist him in concealing them so that Jenkins could not secure possession for the purpose of having them at the place of sale. The purpose of having mortgaged property present at the sale is for the benefit of the mortgagor so that it can be inspected by persons interested in buying; but he can waive this as he can waive any other provision of the chattel mortgage made for his benefit, or even statutes providing for the manner of such sale. Campbell v. Woodstock Iron Co., 83 Ala. 351, 3 So. 369; Thompson v. Fairbanks, 75 Vt. 361, 56 A. 11, 104 Am.St.Rep. 899; Lee v. Stanard 15 Colo.App. 101, 61 P. 234; Fogg v. Holcomb, 64 Iowa, 621, 21 N.W. 111; Fullenweider v. Bank of Waldo et al., 101 Ark. 259, 142 S.W. 149; Berg v. Olson, 88 Minn. 392, 93 N.W. 309; Harrill v. Weer, 26 Okl.

313, 109 P. 539; Denny v. Van Dusen, Adm'r, 27 Kan. 437; Harbour-Longmire Co. v. Reid et al., 124 Okl. 77, 254 P. 29.

His acts in concealing the horses and thereby preventing Jenkins from having them present at the sale was a waiver of his right to have them present. It was a deliberate criminal violation of his contract, and any damage done by reason of his acts was the result of his own fraudulent and criminal conduct, of which he cannot complain.

"In order better to realize the full value of the property sold, it is ordinarily held that it must be in plain view at the time of the sale, and this requirement is sometimes imposed by statute. The mortgagor may waive this condition, however, and will be held to have done so in case he refuses to produce the property on demand." 11 C.J. Title Chattel Mortgages, § 510.

The last contention is that the sale is void because the bill of sale given by the mortgagee to the purchaser (appellee herein) purported to transfer live stock on the range by an unrecorded bill of sale, and that the sale is void under section 4-320, N.M.Comp.Sts.Ann.1929, which reads: "The owner or owners of horses, mules, asses or neat cattle running at large upon any range in this state may dispose of such animals by range delivery while on the range and ungathered, by the sale and delivery of the marks and brands on such animals, but in every such case the purchaser, in order to acquire title to such

animals, must have his conveyance or written transfer of such animals duly acknowledged by the vendor and then recorded in the office of the county clerk of the county in which such animals range, in a book kept for such purpose, and such sale or transfer shall be noted on the record of original marks and brands in the name of the purchaser."

The statute quoted provides for the sale of live stock by marks and brands, including the marks and brands. There was no intention here to sell the mark and brand, but to sell certain specific horses.

The state of Texas has a similar statute which was construed in Guedry v. Jordan (Tex.Civ.App.) 268 S.W. 191, 197, in which it was held that: "This article has application only where stock running on the range are sold or described only by the brand of the owner, and where it is the intention of the vendor to sell his brand to the purchaser, as well as the stock themselves." A number of cases from Texas are cited in that opinion.

Also, see similar cases decided by the Supreme Court of Arizona. Brill et al. v. Christy, 7 Ariz. 217, 63 P. 757. The bill of sale transferred title.

We find no error in the record, and the judgment of the district court will be affirmed.

It is so ordered.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.