6 P.3d 329

**Kathleen MILNER, a single woman, Plaintiff–Appellant,**

v.

**COLONIAL TRUST COMPANY, as Trustee of the Dorothy Long Trust, on behalf of Dorothy Long, a single woman, Defendant–Appellee.**

No. 1 CA–CV 99–0512.

Court of Appeals of Arizona, Division 1, Department B.

June 15, 2000.

---

Rhees, Hopkins & Kreamer By Stephen M. Hopkins and Stephanie L. Brewer, Phoenix, for Plaintiff–Appellant.

Shimmel, Hill, Bishop & Gruender, P.C. By S. Gregory Jones, Phoenix, for Defendant–Appellee.

## OPINION

GARBARINO, Judge.

¶ 1 Interpreting Arizona Revised Statutes Annotated (A.R.S.) section 3–1291 (1995), the trial court ruled that an oral gift of a horse was unenforceable in the absence of a bill of sale. We disagree and reverse the trial court's order granting summary judgment in favor of the defendant, Dorothy Long.[1]

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 We view the facts in the light most favorable to the plaintiff, Kathleen Milner, the party against whom the trial court entered summary judgment. *See Tellez v. Saban*, 188 Ariz. 165, 167, 933 P.2d 1233, 1235 (1996).

¶ 3 Long is the owner of two ranches in Scottsdale where she operates a business boarding horses. Milner became acquainted with Long after Milner visited one of the ranches and volunteered to help train one of Long's horses. Milner and Long became friends and Milner continued to visit and

---

1. Long is a ninety-five-year-old woman. During the course of this litigation, her family requested that the probate court appoint a temporary conservator to represent her interests. The probate court granted the request. Subsequently, Colonial Trust was named trustee of the Dorothy Long Trust and is the appellee in this case.

care for the horse. She also assisted Long with the management of her ranches. In May of 1996, the ranch manager advised Milner that the horse now belonged to Milner. Later that same day, Long orally confirmed the gift.

¶ 4 Based on the understanding that the horse, known by everyone as "Bucky," was hers, Milner began to visit the ranch more often to care for and ride the horse. She also paid for a blacksmith to check the horse on a regular basis. Milner began to refer to Bucky as "Marauder," writing the new name, along with her name and phone number, on the horse's feeder. She requested that the charges for boarding the horse be sent to her. The statements which Long's accountant sent to Milner reflected that there was "no charge" for board. Approximately eight months after Milner began to treat Bucky as her own, she decided to board him at a different ranch. She went to Long's ranch, saddled Bucky, and rode him to the new ranch.

¶ 5 Approximately two months later, Long's new employees noticed that Bucky was missing and reported him stolen. As a result of the report, the Scottsdale Police Department and the Arizona Department of Agriculture conducted investigations to determine who owned Bucky. Following the investigations, Long's employees accompanied a Department of Agriculture Inspector to the ranch where Milner was boarding Bucky, took custody of him, and returned him to Long's ranch. That same day, Milner filed a declaratory action seeking a judgment declaring her to be Bucky's legal owner. She also filed an application for a writ of replevin seeking the return of the horse.

¶ 6 After hearing evidence at the replevin hearing, the trial court directed both parties to file simultaneous supplemental memoranda and took the matter under advisement. The trial court subsequently denied Milner's request for a writ of replevin, stating that "pursuant to [A.R.S. § 3–1291] . . . the claim of the plaintiff is probably not valid." The court further stated that its decision was based on the fact that A.R.S. § 3–1291 requires that a transfer of livestock be evidenced by a bill of sale. Milner filed a

petition for special action with this Court, but jurisdiction was declined. Milner's subsequent appeal was dismissed for lack of jurisdiction because this Court concluded that the order denying the writ of replevin was interlocutory in nature and not a final, appealable order.

¶ 7 Milner then requested that the trial court consider the supplemental memoranda filed after the replevin hearing as cross-motions for summary judgment and enter a final, appealable order. The trial court declined to do so, and the matter was set for trial. Before trial, Long filed a motion for summary judgment. The trial court granted the motion, finding that the prior judge's order denying replevin based on that judge's interpretation of A.R.S. § 3–1291 was the law of the case. Based on that finding, the trial court determined that a trial was unnecessary and it granted judgment in favor of Long. Milner filed a timely appeal. We have jurisdiction pursuant to A.R.S. section 12–2101(B) (1994).

## DISCUSSION

### I. *Bill of Sale*

¶ 8 The issue we must first decide is whether the trial court erred by concluding that A.R.S. § 3–1291 applies to invalidate any transfer of livestock not accompanied by a bill of sale. We review de novo a trial court's interpretation of a statute and its conclusions of law. *See Hale v. Amphitheater School Dist. No. 10 of Pima County,* 192 Ariz. 111, 114, ¶ 5, 961 P.2d 1059, 1062 (1998), *review denied* (1998). Based on the principles of statutory construction, we will "seek to discern the intent of the legislature." *State v. Reynolds,* 170 Ariz. 233, 234, 823 P.2d 681, 682 (1992). "The language of a statute is the most reliable evidence of its intent." *Walker v. City of Scottsdale,* 163 Ariz. 206, 209, 786 P.2d 1057, 1060 (1989). When the language of the statute is plain and unambiguous, we will give the words their ordinary meaning, without resorting to other forms of statutory interpretation. *See State ex rel. Udall v. Superior Ct.,* 183 Ariz. 462, 464, 904 P.2d 1286, 1288 (1995); *Reynolds,* 170 Ariz. at 234, 823 P.2d at 682; *see also*

A.R.S. § 1–213 (1995). We look to statutes on the same subject matter or statutes that are part of the same statutory scheme to determine legislative intent and to maintain harmony. *See Goulder v. Arizona Dep't of Transp.*, 177 Ariz. 414, 416, 868 P.2d 997, 999 (1993), *aff'd*, 179 Ariz. 181, 877 P.2d 280 (1994).

¶ 9 Milner contends that the trial court interpreted A.R.S. § 3–1291 too broadly and that it should not be interpreted to mean that there can be no effective transfer of livestock ownership without a bill of sale. We agree. Section 3–1291 states only that "[u]pon the sale or transfer of livestock, delivery of the animals shall be accompanied by a written and acknowledged bill of sale from the vendor to the purchaser." The statute does not provide that a transfer of livestock without a bill of sale is ineffective or incomplete. The plain language of the statute merely imposes an obligation on the vendor of livestock to provide a bill of sale to the purchaser upon delivery of the livestock. Although the statute obligates the vendor to provide a bill of sale, and the purchaser is entitled to expect one, its absence does not void the transfer.

¶ 10 Before statehood, our livestock transfer statutes were construed to benefit the owners of livestock and to facilitate legitimate transfers. *See Brill v. Christy*, 7 Ariz. 217, 221–222, 63 P. 757, 759 (1901). In *Brill*, the Supreme Court of the Territory of Arizona stated that the statutory requirement of a bill of sale is not meant to "affect the general rights of owners of this class of property to sell or transfer their live stock [sic] in any other manner than those therein specifically defined." *Id.* at 222, 63 P. at 759.

¶ 11 Another statute that discusses a bill of sale is A.R.S. § 3–1308 (1995), which states, "Upon trial of a person charged with unlawful possession, handling, driving or killing of livestock, the possession under claim of ownership without a written and acknowledged bill of sale is prima facie evidence against the accused that the possession is illegal." Section 3–1291 and section 3–1308 read together lead us to the conclusion that an effective transfer does not require a bill of sale, but that a bill of sale is prima facie evidence of ownership. In a California decision that was based on Arizona law, the California Court of Appeals held that a purchaser's failure to obtain a bill of sale from a vendor does not affect his claim of ownership against any claims of ownership by that vendor. *See Platt v. Union Packing Co.*, 32 Cal.App.2d 329, 89 P.2d 662, 665 (1939).

¶ 12 Simply put, Milner claims that Long gave the horse to her. Long disputes Milner's claim and denies ever making a gift. Section 3–1291 does not preclude an effective gift of the horse from Long to Milner. The gift is not invalid merely because there was no bill of sale. The plain language of the statute does not support such a conclusion. The trial court erred by granting Long's motion for summary judgment based on its conclusion that section 3–1291 required a bill of sale to effectuate the transfer as a matter of law.

II. *Application of Gift Statute*

¶ 13 Long argues that even if the bill of sale statute does not apply, the alleged gift to Milner fails under Arizona's gift statute. *See* A.R.S. § 33–601 (2000). Long contends that there was no writing to evidence the gift as required by section 33–601. However, section 33–601 also provides that a gift is valid if "actual possession of the gift is passed to and remains with the donee." A gift is valid under the actual possession provision of section 33–601 if the donee is able to establish that there was clear and unmistakable donative intent by the donor, as well as actual possession and control of the property by the donee. *See Arizona Title Guar. & Trust Co. v. Wagner*, 75 Ariz. 82, 88, 251 P.2d 897, 901 (1952). Whether Long had the requisite donative intent to give the horse to Milner and whether Milner's possession of Bucky was that of a donee or someone who took a horse without the owner's permission is a question of fact. Milner presented evidence at the replevin hearing supporting her claim that Long intended to give Bucky to her and that, following Long's expression of intent and without Long's objection, she took actual possession of the horse. Even if the trial court had found the bill of sale statute inapplicable and had based its decision on the

gift statute, it should not have granted summary judgment because there remained disputed issues of material fact.

## CONCLUSION

¶ 14 Because we conclude that the trial court erred by granting Long's motion for summary judgment, we reverse and remand for further proceedings consistent with this opinion.

CONCURRING: MICHAEL D. RYAN, Presiding Judge, and NOEL FIDEL, Judge.