JOSEPH SOULE, JOSEPH D. SOULE AND HIRAM SOULE *v.* CURTIS B. ALBEE, BETSEY M. ALBEE, NATHANIEL ALLEN, ABEL P. SMALLEY AND JOSEPH PETTINGILL.

[IN CHANCERY.]

*Mortgage. Costs. Statute of frauds.*

If the purchaser of real estate, subject to a mortgage, convey it to another person by warranty deed, it is not necessary to make him a party to a bill to foreclose the mortgage, in order to render the decree conclusive upon the title.

When no litigation is expected, the extra costs of making such a person a party should not be visited upon the party confessedly bound to redeem.

But if the party so joined appear and make no objections to his joinder until the final hearing, he thereby waives any claim to costs.

The petitioners, at the request of A., verbally agreed with S., who had been trusteed in a suit against A., that if he would pay A. the amount he owed him, they would pay any judgment which should be recovered against him as such trustee. In reliance upon this agreement, and upon no other consideration, S. paid A. the amount of his indebtedness. Subsequently A. executed to the petitioners a mortgage conditioned for the payment of a certain note, specifically described in the mortgage, upon which they had become sureties for A., and also for the payment of all sums which the petitioners or S. should become liable to pay for A. in consequence of signing, or otherwise. This latter clause was inserted in the condition with the view of securing the petitioners against their liability to S. under the aforesaid agreement. A judgment was finally rendered against S. in the trustee suit, which was paid by the petitioners. *Held,* that the condition of the mortgage included any legal liability the petitioners might incur in behalf of A.; that their undertaking with S. was an original and not a collateral agreement, and was not within the statute of frauds; that S. might have enforced it against the petitioners, but not against A.; that it was assumed by the petitioners on behalf of A., and that the payment made by them under it was within the terms of the condition, and secured by the mortgage.

PETITION to foreclose a mortgage. It appeared in evidence that on the 21st of September, 1850, the defendant, Curtis B. Albee, held a note for five hundred dollars against Albert G. Soule; that on that day a suit was commenced against Albee in favor of Anson Buck, in which Albert G. Soule was summoned

as trustee. In the latter part of the year 1851, while this trustee suit was still pending, Albee, being desirous to collect his note of Albert G. Soule, procured the petitioners, who were partners under the firm of J. Soule & Sons, to make a verbal agreement with Albert G. Soule that if he would pay Albee the amount due upon the note, they, the petitioners would pay him whatever judgment should be rendered against him as trustee of Albee in the suit in favor of Buck. A. G. Soule refused to pay Albee the note unless he would procure the promise of some responsible person to indemnify him against judgment in the trustee suit, and when the petitioners made the agreement above stated, he paid Albee the amount due upon the note, upon no other consideration, however, than this agreement, and relying entirely upon it for his security.

On the 4th of February, 1852, Curtis B. Albee and Betsey M. Albee, his wife, executed to the petitioners the mortgage in question, the condition of which was that the mortgagors should pay to Hiram Fuller a certain note dated September 20, 1851, for four hundred and forty dollars, payable to Fuller four months after date, and signed by Curtis B. Albee, the petitioners and A. G. Soule, *and* " should also pay all sums that the petitioners or A. G. Soule should become liable to pay for Curtis B. Albee in consequence of signing or otherwise." This mortgage was made for the purpose of protecting the petitioners against the liability they had assumed to A. G. Soule as above stated, as well as the liability they had incurred by signing the note to Fuller.

The suit against Albee, in favor of Buck, in which A. G. Soule was summoned as trustee, remained pending until the 21st day of September, 1855, when judgment was rendered against the defendant for four hundred and fifty-one dollars and ninety cents, and A. G. Soule was adjudged chargeable as trustee for that amount, and an execution was issued against him therefor. The petitioners were called upon by A. G. Soule to pay this execution, and did so, and thereupon brought this bill for the foreclosure of their mortgage against Albee.

The defendant Allen, purchased the mortgaged premises of Curtis B. and Betsey M. Albee subsequent to the registry of the petitioners' mortgage. Before the commencement of this suit the

premises were conveyed by warranty deed by Allen to Israel Hitchcock, and by Hitchcock to the defendant Pettingill, who thereafter continued to own them, except a small portion which he conveyed to the defendant Smalley.

The chancellor decreed a foreclosure of the mortgage, in default of the payment, by the defendant to the petitioners, of the sum paid by them upon the judgment against A. G. Soule, as above mentioned, with costs, by a specified time, from which decree the defendants appealed.

*H. G. Edson*, for the petitioners, claimed that the condition of the mortgage was valid, and embraced the payments made by the petitioners upon the judgment against A. G. Soule, and cited *McDaniels* v. *Colvin*, 16 Vt. 300 ; *Hubbard* v. *Savage*, 8 Conn. 215 ; *Crane* v. *Deming*, 7 Conn. 387 ; *Commercial Bank* v. *Cunningham*, 24 Pick. 270 ; *Merrill* v. *Swift*, 18 Conn. 257 ; Hilliard on Mortgages, vol. 1, p. 218 ; Newland on Contracts 510 ; Story's Eq. J. sec. 400.

*S. Sumner*, for the defendants.

1. The defendant Allen should be dismissed with costs. 2 Swift's Dig. 195.

2. The agreement between the petitioners and A. G. Soule was within the statute of frauds, and the payment of the judgment against him by them was purely voluntary, and therefore their claim for indemnity should not be enforced to the injury of the defendants Pettingill and Smalley, who purchased in good faith for an ample consideration, and under the supposition that the premises were free from incumbrance. *Smith* v. *Ide*, 3 Vt. 197 ; *Anderson* v. *Davis*, 2 Term 80 ; *Watson* v. *Wharham*, 7 Term 290 ; Roberts on Frauds.

3. The condition of the mortgage, aside from the note specifically mentioned, is too vague and indefinite to sustain the claim of the petitioners. It is contrary to the spirit of our registry laws, and to public policy, to allow property to be incumbered in so general and loose a manner. Constitution of Vermont, sec. 35 ; Comp. Stat. 383–4, secs. 1, 4, 7 ; 4 Kent's Com. 175 ; *Pettibone* v. *Griswold*, 4 Conn. 158 ; *North* v. *Belden*, 13 Conn. 376 ;

*St. Andrew's Church* v. *Tompkins,* 7 Johns. Ch. 14; Hilliard on Mortgages, chap. 16, sec. 29.

REDFIELD, Ch. J.   I. It is claimed that Allen is improperly joined in this bill.   He is merely in the chain of title, having purchased the premises of the mortgagor and conveyed them by deed of warranty.   In this way he has an incidental interest in the question, but no such direct interest in the case as to make it necessary to join him, in order to render the decree final and conclusive upon the title.   The interest of Allen is merely incidental, and is exclusively between him and the subsequent grantees.   And it is certain there was no necessity of joining him. The notice to him would more properly come from those who claimed indemnity from his covenants.

Whether one having such an incidental interest, and having been joined, and made no objection upon that ground till the final hearing in this court, can claim to be dismissed with costs, is perhaps more questionable.   Where no litigation is expected, it not being necessary to join such party, the extra costs of such joinder should not be visited upon the party confessedly bound to redeem.   But here litigation seems to have been expected, and Allen is the party ultimately to be affected by the event of such litigation.   If he choose to be dismissed without cost, or without cost except so far as the expense of the litigation has been increased by his joinder, that is probably his right now, strictly and technically speaking.   And any costs, which have accrued since Allen's appearance and the final hearing, are waived, by not objecting to the joinder.   3 Story's Eq. Pl. secs. 225, 236. ·

II. Upon the merits it seems to us the condition of the mortgage will bear no such restricted construction as that claimed by the defendant.   It does in terms extend beyond the specific liability named, and include " all sums that the plaintiffs may become liable to pay by signing or otherwise ;" *i. e.* all sums they may become liable to pay on account of Albee in any way.   The condition does then, in terms, point to a future liability.   And that no sum or limitation is given is not material, as it seems to us.   The naming of a gross sum, as a limitation, amounts to nothing practically.   This may be one thousand dollars, or ten thousand dol-

11

lars, or five hundred thousand dollars, and it equally comes within the rule. Such a condition is not more indefinite or more liable to abuse than that in *McDaniels* v. *Colvin*, 16 Vt. 300, " any book account I may owe him." The cases all seem to justify and uphold such a condition to the extent of all liabilities incurred within the terms of the condition, before any intervening incumbrance or equity. As the terms of the condition are such as to include all liabilities, the only remaining question is in regard to the plantiffs having incurred any legal liability before the conveyance.

It seems to us, upon the proof, that A. G. Soule had no other indemnity for paying the money to Albee except the promise of the plaintiffs to refund the money, in the event of his being held liable upon the trustee process. It was virtually advancing the money to the plaintiffs on their promise to repay it, in the event of A. G. Soule being held upon the trustee process. The plaintiffs would have a right to recover the money of Albee in case of being compelled to refund it to A. G. Soule, but A. G. Soule would have no such right, for he stipulated for none, but on the contrary declared he should look exclusively to the plaintiffs.

Such an undertaking is clearly not within the statute of frauds. It is an original and not a collateral undertaking. And as it was not within the statute of frauds, so it was no attempt to explain the condition of the mortgage by parol, but to show a case of liability under it.

And we see no reason to doubt that it was a valid undertaking, and one which A. G. Soule might have enforced against the plaintiffs. And as it was clearly assumed on the behalf of Albee, we see no reason to doubt that it was within the very terms of the condition of the mortgage.

Decree of the chancellor affirmed.