R. W. DARBY *v.* THE FIRST NATIONAL BANK OF ST. ALBANS.

*Usury.   Referee's Report Should State the Facts.   Bank, Cashier, Adoption of his Acts.   Practice.*

1.  In an action against a bank to recover the penalty for the taking of illegal interest, the usurious transaction having been conducted nominally at least by the cashier, but claimed by the plaintiff to be a mere cover of the bank to conceal its part in receiving the usury, the referee failed to find the material fact, which of the two the plaintiff negotiated with,—the bank, or the cashier individually; but reported the facts for and against the plaintiff's theory, and submitted to the court, not to infer the *fact*, but to decide whether the "things done amounted *in law* to a mere cover," &c.; *Held*, that it was not an inference of law but a pure question of fact, and that the court had no authority to infer from the reported facts, that the loan was made by the defendant, and the manner of it a trick to evade the usury laws.

2.  The notes received by the cashier were subsequently turned over to the bank; but it was not found that it adopted the transaction, or that it received the illegal interest.

ACTION to recover the penalty for the taking of illegal interest. Heard on the report of a referee, September Term, 1883, ROYCE, Ch. J., presiding. Judgment for the plaintiff to recover the sum of $3,191.70.

The referee found, that, in the latter part of 1875, the plaintiff wishing to effect a loan of about $3,000, applied to Jed P. Ladd, Esq., an attorney, to find the money for him; that said Ladd consented to act in the matter and saw Albert Sowles, cashier of the defendant, in regard to it; that

on January 20, 1876, the plaintiff and said Ladd went to St. Albans, saw Sowles at the bank, and the terms of the loan were agreed upon; that, accordingly, the defendant gave his notes to said Sowles, secured by mortgage, for $3,600, but received therefor only $3,120; and that after the notes and mortgage were executed, Sowles went into the bank vault, brought out the money in bills, which he counted out to the plaintiff over the bank counter; and that the plaintiff supposed he was dealing with the bank. Various other facts, tending to support the claims of each party, were set forth in the report; but in view of the decision of the court, it is unnecessary to state them. The referee submitted questions to the court, in part, as follows:

"If the court should be of opinion as a matter of law from the facts above found and reported, that the things done and said by the said Sowles with reference to said loan prior to and on said 27th day of May, 1876, which are claimed by the defendant to establish in fact, and in law, that said loan was made on the 21st day of January, 1876, by said Sowles and not by the defendant, amounted in law to a mere cover for an usurious transaction by the defendant, and ought therefore to be held in law, so far as this plaintiff's rights and remedies are concerned, void and of no effect, and that in contemplation of law, said loan was made by the defendant to the plaintiff on said 21st day of January, 1876, then I find that on said last-mentioned day the defendant loaned to the plaintiff the sum of $3,120, and that up to and including said 26th day of November, 1881, when said transaction was finally closed up as above set forth, the defendant knowingly took and received from the plaintiff, on account of said loan, the principal thereof in full, and the further sum of $1,595.85 as and for interest on the same, which being a rate of interest greater than six per cent per annum, the plaintiff should recover of the defendant twice the amount of interest thus paid, being the sum of $3,191.70. If the court should be of opinion, as a matter of law, from the facts above found and reported, that said loan was in contemplation of law made to the plaintiff on said 21st day of January, 1876, by said Sowles, and not by the defendant, and that the defendant on said

27th day of May, 1876, purchased said debt and notes from said Sowles, paying therefor the sum of $3,600, being the face of said notes, then I find that at the time of such purchase, the cashier of the defendant had full knowledge that said notes contained the sum of $480 of usury, being given for the loan, in fact of the sum of $3,120, and that the president of the defendant knew that said Sowles took said $480, from the cash drawer May 27, 1876, as aforesaid." * * *

" I am unable to find from the evidence before me, unless it is to be presumed as matter of law from the facts above found, which question is respectfully submitted to the court, any wilful intention upon the part of the defendant to charge the plaintiff a greater rate or amount of interest than six per cent upon the face of said notes."

*Roberts & Roberts*, for the defendant, cited *Kimball* v. *Baxter*, 27 Vt. 628; *Needham* v. *Holt*, 54 Vt. 326, and argued on the question decided substantially as the court hold.

*Jed P. Ladd* and *Edson, Cross & Start*, for the plaintiff.

The report finds facts ample to warrant the finding of the fact, either by the referee or by the court, that the loan was made by the defendant bank to the plaintiff by its cashier, notwithstanding that it was intended by the defendant at the time of the transaction to do the business in such way that in case of suit either might claim to be the principal in the matter.

The transaction was a mere subterfuge to cover the taking of usury.

The report shows that the plaintiff traded with the bank for this loan at an usurious rate; that he actually received the bank's money and delivered his securities to the bank; that the bank confessedly owned the debt after May 27, 1876; that he made all his payments to the bank, and received his cancelled securities from the bank. Yet it is claimed that the bank never made this loan; because, forsooth, the cashier, after the plaintiff had made his loan and got the bank's money, put his check in the cash drawer, and subsequently took it out again and $480 with it.

No loan by a cashier which is subsequently transferred by him to the bank, the bank receiving all the payments, can be sustained for that purpose unless the case affirmatively shows that the transaction was *bona fide.* It must not be secret and unknown to the borrower. The plaintiff is clearly entitled to recover. *Barnet* v. *Bank,* 98 U. S. 555; *Bank* v. *Johnson,* 104 U. S. 271.

The opinion of the court was delivered by

VEAZEY, J. In order to say that the transaction between the plaintiff and the cashier was the transaction of the bank, when it occurred, and was conducted by the cashier as a mere cover of an usurious transaction by the bank, this court would have to infer this fact from what is reported. The fact is not found, and yet is essential to the plaintiff's right of recovery. It is not an inference of law; nor is it a mixed question of law and fact. It is purely a question of fact. The court cannot, upon the report of a referee, infer facts from other facts reported. *Kimball* v. *Baxter,* 27 Vt. 628. It can only pronounce the law upon the facts found by the referee. *Fuller* v. *Adams,* 44 Vt. 543. It is not the form of expression that is controlling. If, for instance, in this case, the referee had added a finding that in the transaction the cashier was not acting in his own behalf, but for the bank, it would have been equivalent to a finding that it was the transaction of the bank. The point is illustrated in the case of *Alexander* v. *Bank of Rutland,* 24 Vt. 222, where it was held, that if a referee reports such facts as constitute an agency, the court can find the agency as matter of law, without an express statement of such conclusion by the referee. But such is not this case. Here the referee reports one set of facts tending to show the transaction was that of the bank, and another set of facts tending to show it was not, but was the individual transaction of the cashier; and does not submit to the court to find or infer the ultimate fact from what is reported, as was done in the

---

---

case of *Durant* v. *Pratt,* 55 Vt. 270, which was a cause in equity; but says that "if the court should be of opinion as *matter of law* from the facts" stated that the "things done amounted *in law* to a mere cover," &c., "and ought therefore to be held *in law,*" so and so, and that "in contemplation of law" said loan was made by the bank, then he finds that the defendant made the loan, &c.

The right of the plaintiff to recover is made to depend on a fact not found, and which the court, as established in several cases, has no right to infer as a fact from what is found. When a referee cannot find a material fact, which some evidence tends to prove, it would be much better to so state, if it is necessary in drawing the report to state the evidence, in substance *pro* and *con* in reference to it. Any uncertainty in statement of conclusions by a referee should be avoided, as it is liable to lead to injustice in the decision upon the report.

This report also fails to show that the defendant bank subsequently adopted the transaction as it took place. On this point, as on the other, the report states what was done, or what the evidence tended to show took place, when the notes were turned over to the bank, some four months after the original loan. The findings on this part of the case leave the bank free and clear of any usury. From these findings it appears that the bank paid the full face of the notes and has received only legal interest thereon. It is not found that the bank ever became a party to, or a beneficiary of, the usurious feature of the transaction. It is strenuously argued that the defence is a pretence and a sham, and that the loan was by the defendant, and that the manner and form of the transaction was a mere cover and trick, as many of the facts reported tend to show. This may be so; but however convincing the argument ought to have been to the referee, or might have been to us if we were at liberty to infer the additional fact, no argument can supply a fact that is wanting and necessary to a recovery.

Judgment reversed, and judgment for defendant.