# D. P. PEABODY, ASSIGNEE, v. WALTER C. LANDON.

*Chattel Mortgage.   Power of Sale.   After Acquired Property.   Insolvency.*

1. A chattel mortgage is not rendered void by the fact that the mortgagee consents, by the terms of the mortgage or otherwise, that the mortgagor may sell the mortgaged property, from time to time, at least where it is stipulated that the property so sold shall be replaced by other of similar kind and value.

2. Where the mortgage provides that the property so substituted shall be subject to the terms of the mortgage, and the mortgagee takes possession of it, with the consent of the mortgagor, it is thereby brought under the operation of the mortgage as of the date of the mortgage.

3. H. bought a stock of goods of the defendant and mortgaged them to him to secure the purchase money. The mortgage provided that, as such goods were sold they should be replaced with others of like kind, and of sufficient value to keep the security of the defendant good. December 1 defendant took possession of the entire stock under the mortgage. At that time H. was insolvent, but defendant did not know it. December 3 proceedings in insolvency were begun against H., under which plaintiff was appointed assignee. At the time defendant took possession, about one-third of the goods were of the original stock. *Held,* that the defendant could hold, as against the plaintiff, both the goods originally mortgaged to him, and those substituted by H. for the goods sold, the mortgage having been executed more than five months before the commencement of the insolvency proceedings.

Action of trover for a stock of goods. Plea, the general issue. Trial by court at the September Term, 1888, Royce, Ch. J., presiding, upon an agreed statement of facts. The court rendered judgment, *pro forma,* for the defendant to recover his costs, to which the plaintiff excepted. . The case appears in the opinion.

*J. C. Baker*, for the plaintiff.

A large portion of this stock was acquired after the execution of this mortgage, and as to this the mortgage cannot be valid, since one cannot mortgage that which is not in existence as his property at the time of the execution of the mortgage. Her

man Ch. Mort. 89 ; *Barnard* v. *Eaton,* 2 Cush. 294 ; *Codman* v. *Freeman,* 3 Cush. 306 ; *Henshaw* v. *Bank Bellows Falls,* 10 Gray, 568 ; *Low* v. *Pew,* 108 Mass. 347.

By a decided balance of authority a mortgage of a stock of goods, with the power of sale in the course of trade, is fraudulent in law and void. Jones Ch. Mort. 215 ; " An American View of Twyne's Case," 2 South Law Rev. 731.

The United States Courts, in administering the bankrupt law, held that this kind of a mortgage was wholly void. *In re Bloom,* 17 B. R. 425 ; *in re Foster,* 18 B. R. 64.

The original taint of a fraudulent mortgage is not removed by taking possession of the mortgaged property. *Blakeslee* v. *Rossman,* 44 Wis. 550 ; *Steine* v. *Munch,* 24 Minn. 390.

If void as to part it is void *in toto.* *Russell* v. *Winne,* 37 N. Y. 591; Jones Ch. Mort. 401.

The deputy sheriff took possession of this stock of goods, under the mortgage, as an officer of the law. The law gave him the right to take possession of that portion which was conveyed by the mortgage, and of none other. The most that the mortgage conveyed was that portion of the goods which was on hand when the mortgage was executed. Therefore, as to the after-acquired portion, he never had any possession at all, hence the defendant has never taken possession of them. The officer was an officer executing his duty, not the agent of Landon.

*Charles H. Joyce,* for the defendant.

Where a mortgage of personal property provides that after-acquired property shall be subject to its operation, the mortgagee will hold such property if he takes possession of it before a third party has gained legal title to it. 2 Hill Mort., Ed. 1864, pp. 384, 386, 387, 389, 529 and 530 ; 10 Met. 481 ; 14 Pick. 497 ; 13 Met. 17, 29 ; 2 Cush. 294, 303 ; 3 Cush. 306, 309 ; 1 Allen, 569; 7 Gray, 490 ; 11 Met. 333 ; 4 Met. 306 ; 2 Ed. Ch. 438 ; 8 Bar. 102 ; 5 Smith, 123.

The opinion of the court was delivered by

Ross, J. This is an action in favor of the plaintiff, as assignee of Lee S. Houghton, against the defendant to recover the avails of goods sold under a mortgage of personal property given by Houghton to the defendant. From the agreed statement of facts, it appears that June 1, 1885, the defendant sold to Houghton a stock of goods, and took Houghton's four notes in payment to the amount of four thousand dollars, payable in two, three, four and five years from date, secured by a mortgage on the stock of goods sold. Houghton also rented the defendant's store in which to carry on the business. The mortgage describes the property conveyed, as : " All the stock of boots, shoes, rubbers, slippers and other stock of like description now on hand in the store, * * * * and all stock of a like kind hereafter purchased and placed in said store by me, and I hereby agree to make such further purchases and keep said stock good to the amount of four thousand dollars from the receipts and avails of the sale of said stock hereafter purchased in the usual course of business. And I agree to keep said stock insured for the benefit of said grantee, to the extent of his interest therein." There is a further stipulation that if said Houghton should fail to keep the said stock up to, or insured for the required amount, the defendant might cause all the property to be sold as prescribed in the mortgage. Houghton went on selling from the stock purchased, with the knowledge and consent of the defendant, and continued to make new purchases, so as to keep the stock up to the required amount, making some of the purchases for cash and some on credit, until December 1, 1887. In the mean time he had paid one year's interest on the notes and one hundred thirty dollars of the principal. One of Houghton's creditors, having a claim against him for about fifteen hundred dollars, sued out a writ of attachment against him and placed it in the hands of the sheriff for service. Before this last was done, on the same day, without any knowledge of this creditor's action, so far as is shown, the defendant placed his mortgage in the hands of a deputy sheriff with instructions to take possession of

the stock of goods then on hand, and sell the same under the terms of the mortgage agreeably to law. The deputy sheriff at once took peaceable possession of the stock of goods, by the leave and with the consent of Houghton, and sold the goods according to the provisions of the mortgage, and of the statute. Dec. 3, 1887, a petition in insolvency was filed against Houghton, which passed into judgment Dec. 14, 1887, and the plaintiff was duly appointed the assignee of his estate in insolvency, and demanded the goods which the deputy sheriff had taken possession of. On invoicing the goods, it was ascertained that over one-third of the goods were of the stock at the date of the mortgage, and that the others had been purchased after the mortgage was given, partly for cash, but mostly on credit. It did not appear how many of the goods were purchased for cash. The goods did not sell for enough, after deducting the expenses of the sale, to pay the mortgage debt due the defendant. Until 1878 a mortgage of personal property was not provided for by the statute law of the State. The present law was then passed authorizing the mortgage of all such property. This law provides that such mortgage shall not be valid against any person except the mortgagee and his representatives, unless possession of the property is delivered to, and retained by the mortgagee, or the mortgage is recorded as therein provided by R. L. s. 1966. Each party to the mortgage is required to make oath that the debt specified is a just debt, and owing from the mortgagor to the mortgagee, and that the mortgage is given to secure the payment of the debt, and for no other purpose. S. 1967. The statute has provisions for recording and for foreclosing all such mortgages. There is no claim made that the mortgage was given for any other than the honest purpose of securing payment of the debt incurred by Houghton in purchasing the original stock of goods of the defendant. From the language of s. 1966, it is apparent that it is the intention of the Legislature to make the record of the mortgage as there required, a substitute for taking and retaining possession of the goods conveyed by the mortgage.

(21)

The statute contains well guarded provisions against the removal of the goods from the State, and against their sale · by the mortgagor, except by the consent of the mortgagee in writing endorsed upon the mortgage or its record. There is in this mortgage no express authority given by the mortgagee to the mortgagor to sell the mortgaged goods, but the mortgage contains an express provision against the pledge, sale or mortgage of any of the goods mortgaged, without the consent in writing of the holder endorsed thereon. That the mortgagor shall not sell without such consent in writing of the holder of the mortgage, endorsed thereon, is in accordance with the provisions of the law. R. L. s. 1972. While the statute does not in terms declare that the mortgagee may, in the manner specified, consent to the sale of the mortgaged goods, or to some part thereof, and still hold his mortgage upon the unsold goods, such authority is fairly implied from the section last cited. It would be nugatory to provide for a sale with the written consent of the holder of the mortgage, if the giving of such consent discharged *ipso facto*, the mortgage, or rendered it invalid in the hands of the holder. The mortgage was duly recorded, and the deputy sheriff proceeded duly in the sale of the goods. By the stipulation of the parties it is agreed that the court shall determine their rights in accordance with law, regardless of the form of action and pleadings.

On this state of facts, and of the statute law governing the execution of mortgages of personal property, the plaintiff makes several contentions :

1. He contends that the consent of the defendant to the sale of the goods by Houghton, without accounting to him for the avails of the sale, whether that consent is contained in the mortgage, by express terms or by implication, or was given by endorsement upon the mortgage in writing, or its record, as provided by the statute, rendered the mortgage, *per se*, fraudulent and void. In support of this contention he cites cases from several of the States, and one from the United States Supreme Court. All the cases so cited, and many more, with a general

review of the law and decisions of courts of final resort, with the reasons in support of and against such contention, may be found in Pierce's Work on Mortgages of Merchandise, published in 1884, and in Jones on Chattel Mortgages, 2d Ed. The decisions in this country are quite numerous and conflicting. It would be needless to review the decisions after the careful and exhaustive work of these eminent law writers. The most that we shall attempt will be to state briefly the results arrived at by each, and, as the question is for the first time presented to the consideration of this court, the reasons for the decision we have arrived at.

Mr. Pierce claims that the balance of authority in both State and national courts, as well as of reason and principle, is in favor of holding such mortgages fraudulent, *per se*, and void. The foundation for this holding is found, by the writer, and by the decisions adopting and enforcing it, in Twyne's case, 3 Coke, 80. In that now celebrated case Pierce was indebted to Twyne in £400, and to C. in £200. C. commenced an action on his debt. Pending this action, Pierce, who was possessed of goods and chattels to the value of £300, in secret made a deed of all his goods and chattels to Twyne in satisfaction of his debt, and yet continued in possession of the same, sold some of them and marked the sheep with his own name. The deed to Twyne was held void, notwithstanding it was made for full consideration. The decision is based on the six resolutions promulgated by the court :

First—That the deed had the marks of fraud, in that it was general, not excepting apparel or anything of necessity.

Secondly—The donor continued in possession.

Thirdly—It was made in secret.

Fourthly—It was made pending the suit.

Fifthly—There was a trust between the parties, for the donor was in possession and used them.

Sixthly—It was contained in the deed that it was an honest and true transaction, an unusual statement to be inserted.

The court conclude, for these six reasons, that the deed was fraudulent and void.

It is apparent that too much prominence has been given by certain courts to some one of these reasons as the controlling element of fraud in the sale or conveyance of personal property. It has been and is still held by this court that against attaching creditors, or *bona fide* purchasers, for value paid, without notice, a sale of personal property, unaccompanied by delivery and change of possession, is only valid between the parties; that to allow the vendor to retain posssession gives him a false credit, and renders the sale invalid when attacked by an attaching creditor, or a *bona fide* purchaser, for value paid, as against public policy. This doctrine has been drawn from that decision in only a few of the jurisdictions which have adopted its principles. The great majority of courts of final resort, which adopt the principles of that decision, hold that the retention of possession is only evidence bearing on the question whether the sale is fraudulent and void ; that inasmuch as possession usually accompanies the ownership of this class of property, such possession is *prima facie* evidence of such ownership, and if the property is found in the possession of a debtor, the creditor or purchaser, without notice to the contrary, has a right to assume that the debtor or vendor owns the property, and so the purchaser who has left such property in the possession of the vendor takes upon himself the burden to rebut this presumption of ownership. Because of the extreme view of this court in regard to the effect of the want of a change of possession, Mr. Pierce is inclined to count this State as favoring his views in regard to the effect of the Twyne case upon the validity of mortgages of personal property, when the possession is retained by the mortgagee, and the mortgagor has given him the power to sell the mortgaged property, either in the mortgage or otherwise. He admits that the retention of possession of the property is only evidence of fraud in the mortgage, in that it furnished a convenient opportunity for the mortgagor to use the property for his own benefit. But this writer insists that when, besides possession of the property in the mortgagor, power is conferred upon him by the terms of the mortgage, or otherwise, to sell the property in his own name, and

not as the agent, and on account of the mortgage, the mortgage is fraudulent, *per se*, and void ; and that it is the duty of the court to declare it void. He, with much reason and citation of authorities, contends that the determinative element of fraud, contained in the six resolutions in Twyne's case, was vesting the proper title to the property in Twyne, while the possession and beneficial use of the property remained in its debtor; that the covering of the title by Twyne, through the deed, while the beneficial use of the property and the avails to be derived from its sale by the agreement, though secret, belonged to the debtor, made the transaction fraudulent, *per se*, or such that it would necessarily hinder and delay creditors in the collection of their debts ; that such conveyances are necessarily vicious and against public policy. There is much force in this contention if the power of the sale is general, or such that the mortgagor may both sell and use for his own benefit, the whole property covered by the mortgage, by a single transaction. Mr. Jones admits as much, but contends that the power of sale from a stock of goods in the usual course of business, under an express stipulation to maintain the stock at a fixed value or more, does not authorize a sale of the whole stock by a single transaction, and that a deed accompanied with such a power is not, *per se*, fraudulent, and the court have no right to pronounce it fraudulent. We think there is much force in this contention by Mr. Jones. The power of sale in such a case is limited by the stipulation to keep the stock of fixed value. Both these writers admit that most of the statutes authorizing mortgages of chattels, make the record equivalent to a change and retention of possession by the mortgagee. The record of the mortgage gives publicity to the transaction, and furnishes a place where all dealers with the mortgagor may learn its exact terms and provisions, and is constructive notice to them at least of its terms and provisions. If they trust him thereafter, legally, they do it understandingly. If such mortgages, with such a power of sale, contain in some sense a trust beneficial to the mortgagor, the record legally removes its secrecy. Such mortgages, if accompanied with a power of sale of all the

property by a single transaction by the mortgagor, without
accountability to the mortgagee for the avails, are not always
nugatory in the sense that they furnish no security for the pay-
ment of the mortgagee's debt. ·While the mortgagee has to·
trust largely to the honesty and good faith of the mortgagor in
such a case, he does not always trust in vain; neither is such a
mortgage always or generally the result of a fraudulent intent
between the parties. ·For this reason Mr. Jones contends that,
to avoid such mortgages, the fraudulent intent should always be
established as a fact, and that the mortgage and its conditions,
or the power of sale conferred *aliunde*, are to be considered in
determining the intent of the parties. In most of the jurisdictions
where this question has been passed upon, it is held that such a
mortgage, with such a general power of sale, is valid, if the mort-
gagor is required by the terms of the mortgage to account to the·
mortgagee for the avails of the sale. It is to be observed that
the mortgagee in such a case places the avails of the sale wholly
within the power of the mortgagor, and must trust him, to a
greater or less extent, to pay them over on the debt secured.
Yet, with the general power of sale, the parties, when the mort-
gage is made honestly, intend the property, conditionally conveyed,
as security for the payment of the debt; and use it for that pur-
pose. There is no question in regard to the validity of such mort-
gages between the parties. It is contended that they should not be
held fraudulent, *per se*, and void, because such mortgages fur-
nish a convenient opportunity to cover the property away from
the other creditors for the benefit of the mortgagor, when they
may be honestly intended and used to secure the payment of the
mortgagee's debt in the most economical, and in such an inex
pensive manner, as to save something for the other creditors, or
at least for the mortgagor. It seems to us that so far as con-
trolled by public policy, the question is for the Legislature,
rather than for the court, and that the fundamental error of Mr.
Pierce, and the authorities which hold such mortgages fraudu-
lent, *per se*, and void, lies in assuming that the question is to be
determined by the principles of the common law as propounded in

Twyne's case, rather than by a fair construction of the provisions of the statute, and of public policy as indicated by the provisions of the statute. An examination of the various statutes on this subject shows quite a variety in their scope and provisions, which would naturally lead to a diversity in the decisions. From the provisions of the statute in this State it is quite apparent that the record of the mortgage is intended to prevent secrecy, and take the place of a change of possession of the property. It has never been held, so far as we are aware, that a pledge of personal property for the payment of a debt, accompanied with a change of possession to the hands of the creditor, and with a general power in the debtor to sell, was, *per se,* fraudulent and void. But such, and all other transactions between a debtor and creditor, by which the property of the former is conveyed absolutely or conditionally for the payment of a debt due the latter, are open to the scrutiny and investigation of other creditors, and if found merely covers to delay and hinder the other creditors in the collection of their debts, are fraudulent and void. Under a statute which allows the mortgage of all kinds of personal property, but requires, for their validity against other creditors, a change to and retention of the possession of the property by the mortgagee, or that the mortgage should be recorded in a public office where it can be examined by all other creditors; which further requires that the debt secured shall be specified, and that the parties shall make oath to the existence of the debt, and that the mortgage is given to secure its payment and for no other purpose; and which further impliedly provides that the mortgagor may, with the written consent of the mortgagee, endorsed on the mortgage, sell the property, we do not think it is the province of the court to test such mortgages by, and hold them fraudulent, *per se,* and void under the principles and decisions of the common law, and against public policy, because, if the parties should commit perjury in making their oath thereto, such mortgage could be intended, and made the cover of the property for the benefit of the mortgagor, and so hinder and delay his other creditors. Mortgages executed under the provisions of

such a statute, we think, should be held, *prima facie*, valid, and executed for the honest purpose of securing the payment of the debt specified, until the contrary is made to appear. They are capable of being used for the honest purpose specified in the oath of the parties. That they furnish an opportunity to defraud the other creditors, furnishes no occasion for the court to adjudge them, *prima facie*, much less conclusively, fraudulent, until it is established that the oath of the parties thereto is false, and that they were intended or have been used by the parties, to hinder and delay other creditors in collecting their debts. If this mortgage were fraudulent, *per se*, then what the parties did under it in taking and delivering possession before the petition for the adjudication of the insolvency of the debtor was filed, would be of no avail to the defendant, to enable him to hold the goods which are included within the terms of the mortgage. But being valid, as we hold, no question can be made in regard to the right of the defendant to hold the goods which were in the store at the time of the execution of the mortgage. These goods the defendant would hold by force of the mortgage, if no possession had been taken under the mortgage before the filing of the petition in insolvency.

2. The plaintiff contends that the defendant cannot hold the after-acquired goods, as they were not in existence as the property of Houghton, either expressly or potentially, when the mortgage was given. At law it is elementary that one cannot convey by mortgage, or absolutely, personal property which has no express or potential existence as his property at the time of the conveyance. If the mortgage was fraudulent, *per se*, and void, possession taken under it would be of no avail. Being void, all acts done under it would partake of the same invalidity. The maxim, *ex nihilo nihil fit*, would apply. But the mortgage being valid, and of force, not only as between the parties, but as against attaching creditors and *bona fide* purchasers for value paid, the agreement to include the after-acquired goods fitted and necessary to keep the stock up to the required amount or more, was also valid. This was a valid agreement to place such

after-acquired goods of the class and description named, within the operation of the mortgage as soon as they were acquired. In equity what the parties had thus agreed to do, would be treated as done as soon as the property was acquired. But at law it is otherwise until the parties have done some act to identify the property intended, and place it within the operation of the mortgage. Taking possession by the mortgage under a valid mortgage has frequently been held a sufficient act for this purpose, although the mortgagor did not participate in it. But where, as here, the possession is taken by the mortgagee, or his agent, with the consent and approval of the mortgagor, it has always, so far as we have observed, been held sufficient to place the after-acquired goods within the operation of the mortgage. The mortgagee is then a mortgagee in possession of property which the mortgagor agreed should be covered by the mortgage, and which his consent and approval has placed under its cover. There is force in holding that, under a mortgage in terms covering after-acquired property, the act of the mortgagor, in purchasing, and bringing after-acquired property into the common stock of such property, is consent on his part, or his placing such goods, so far as he can, within the operation of the mortgage, and that nothing more is needed, but for the mortgagee to accept the goods so placed, which he does by taking possession. When so taken possession of, before seizure by other creditors, the goods come under the cover and operation of the mortgage as of its date. The mortgage being of more than four months standing, is valid against the proceedings in insolvency. The after-acquired goods thus brought under the operation of the mortgage before any right of other creditors attached, belong to the mortgagee, and not the assignee in insolvency. No fact is found or stated, tending to show that the defendant knew of the insolvency of Houghton before he took possession of the goods. It is stated that Houghton was in fact insolvent on the day the defendant caused possession to be taken under the mortgage. The question is not raised, or considered, in regard to the rights of the parties, if it had been stated that the defendant

knew that Houghton was insolvent when he took possession, and took possession to obtain the preference agreed to be given him in the mortgage. Under the late United States bankrupt law it was frequently held that a mortgage executed so recently as to be inoperative as against the adjudication of bankruptcy, was nevertheless valid and operative, if made in accordance with an agreement between the mortgagee and bankrupt of long enough standing to be valid against the adjudication,—that such mortgage was to be given effect as of the date of the agreement.

While this is the first time the questions involved in this case have been before the court for consideration, it is not the first time they have arisen and been decided. The same questions arose on two occasions in insolvency proceedings in Caledonia County. In one instance they were submitted to the late Judge Poland, and in the other to Judge Powers and the judge of insolvency. The questions were carefully presented and considered, and the same conclusions reached which have been herein announced.

*The judgment of the County Court is affirmed.*