FRANK D. THOMPSON, TRUSTEE, v. HENRY FAIRBANKS.

May Term, 1903.

Present: TYLER, MUNSON, START, WATSON and HASELTON, JJ.

Opinion filed August 1, 1903.

*Chattel mortgage—After acquired property—Validity—Taking possession under—Bankruptcy—Fraudulent transfer—Preference—Sufficiency of description of debt.*

A chattel mortgage on after-acquired property, under which the mortgagee has taken possession of such property with the mortgagor's consent, is valid against the mortgagor's trustee in bankruptcy, in the absence of an express finding that such possession was taken for the purpose of affording a preference, though possession was so acquired within four months prior to the date of the mortgagor's petition in bankruptcy, and with knowledge that the mortgagor was insolvent and contemplating bankruptcy proceedings.

This result is not prevented by the fact that when the mortgagee took possession of the property, it was subject to an attachment which was invalidated by the bankruptcy proceedings.

Nor does the mortgagor's consent to such taking of possession amount to a fraudulent transfer of such property, in the absence of an express finding to that effect.

Such possession does not amount to a lien created by legal proceedings.

A condition in a common law chattel mortgage that the mortgagor shall pay all that he then owed the mortgagee, or might thereafter owe him "by note, book account, or in any other manner," is sufficient to cover a claim for rent subsequently accruing.

A condition in such a mortgage that the mortgagor shall save the mortgagee "harmless and indemnified from paying any commercial paper on which he has become, or may hereafter become, holden in any manner" for the mortgagor's benefit "as surety, endorser, or otherwise," is sufficient to cover an outstanding note subsequently signed by the mortgagee as surety for the mortgagor, though the mortgagee has not paid it.

The sufficiency of the description of the debt secured by a common law chattel mortgage is determined by the rules applicable to real estate mortgages.

GENERAL AND SPECIAL ASSUMPSIT. Plea, the general issue with notice of special matter. Heard on the report of a referee, at the December Term, 1902, Caledonia County, *Watson,* J., presiding. *Pro forma* judgment for the defendant. The plaintiff excepted.

*Porter & Thompson* for the plaintiff.

Under the Bankruptcy Act of 1898, the trustee is the representative of the creditors. *In re Pekin Plow Co.,* 112 Fed. 308; *In re Booth,* 98 Fed. 975; *In re Yukon Woolen Co.,* 96 Fed. 326; *In re Howland,* 109 Fed. 869.

The mortgage in question was void for want of proper description of the property. It leaves the determination of the specific property resting exclusively in the minds of the parties. *Parker* v. *Chase,* 62 Vt. 206; *Huse* v. *Estabrooks,* 67 Vt. 223. It does not appear from the mortgage in what town the property is located, and it is found that other property of the same kind was kept on the premises, so mixed with the mortgaged property that only the mortgagor, or some one having equal knowledge, could identify it. *Jaffrey* v. *Brown,* 29 Fed. 476; *Stroud* v. *McDaniel,* 106 Fed. 493.

The mortgage was invalid as to the after-acquired property. *Peabody* v. *Landon,* 61 Vt. 318; *In re Allen's Est.,* 65 Vt. 392; *Moody* v. *Wright,* 13 Met. 17.

The description of the debt and the affidavit were not in conformity with the law. V. S. 2253, 2255; *Tarbell* v. *Jones,* 56 Vt. 312; *Sherman* v. *Organ Co.,* 69 Vt. 355; *Nichols* v. *Bingham,* 70 Vt. 320; *Page* v. *Ordway,* 40 N. H. 253; *Phillips* v. *Johnson,* 64 N. H. 393; *Ehler* v. *Turner,* 35 N. J. Eq. 68; *Receiver* v. *Spielman,* 50 N. J. Eq. 120; *Thropp* v. *Knight,* 28 Atl. 1037.

The Ryan attachment prevents the defendant's possession from making this mortgage valid. When Moore was adjudged a bankrupt, the attachment was released, so the property, by operation of law, passed to the plaintiff. *In re Andrae Co.,* 117 Fed. 561; *Beamer* v. *Truman,* 84 Cal. 554.

The defendant's taking possession in the way he did constituted a preference. Bankruptcy Act, ss. 60a, 60b. Under this statute the intent of the parties cuts no figure. *Wilson Bros.* v. *Nelson,* 183 U. S. 191; *In re Sheridan,* 98 Fed. 406; *Babbitt* v. *Kelley,* 70 S. W. 384; *Landis* v. *McDonald,* 88 Mo. App. 338; *Matthews* v. *Hardt,* 6 A. B. R. 373; *In re Klingaman,* 101 Fed. 691.

The rent was not secured. *Nichols* v. *Bingham,* 70 Vt. 320.

The Passumpsic Savings Bank note is not secured. The defendant's liability thereon is not sufficiently described in the mortgage, and he has not paid the note. All claims turn upon their status at the time of filing the petition. *In re Bingham,* 94 Fed. 766.

The officer paid the defendant $126.62 more than his claim, which sum the plaintiff is entitled to recover.

*Jonathan Ross* and *Harry Blodgett* for the defendant.

By suing for the avails, the plaintiff ratifies the mortgage and sale. *Perry* v. *Shumway,* 73 Vt. 191; *Farrar* v. *Powell,* 71 Vt. 247; *White* v. *White,* 68 Vt. 161; *Bishop* v. *Catlin,* 28 Vt. 71.

The mortgage of 1891 was valid. *Smith* v. *Aikins,* 18 Vt. 461; *Bellows* v. *Wells,* 36 Vt. 599; *Moody* v. *Wright,* 46 Am. Dec. 706; *Mitchell* v. *Winslow,* 2 Story, 230.

It was certainly valid against the plaintiff after possession was taken under it. *Peabody* v. *Landon,* 61 Vt. 318; *Francisco* v. *Ryan,* 56 Am. St. Rep. 711, and note.

The transfer of possession was not a preference. *Sabin* v. *Camp,* 98 Fed. 974; *Walker* v. *Brown,* 165 U. S. 654; *Ketchum* v. *St. Louis,* 101 U. S. 306; *Rice* v. *Hewett,* 63 Vt. 321; *Desany* v. *Thorp,* 70 Vt. 31; *McLoud* v. *Wakefield,* 70 Vt. 558.

The description of the debt is sufficient. *Parker* v. *Chase,* 62 Vt. 206.

The description of the property is sufficient. *Bank* v. *Fitts,* 67 Vt. 57.

WATSON, J. Sometime before June 22, 1886, the bankrupt, Herbert Moore, bought a livery stock and business in St. Johnsbury Village. In part payment therefor, he assumed a mortgage then outstanding on the property. The business then was and continued to be carried on in buildings leased of the defendant. Shortly before March 1, 1888, the defendant assisted Moore to pay the assumed mortgage by signing a note with him for $1,425, payable to the Passumpsic Savings Bank, of St. Johnsbury. Defendant also signed other notes with Moore,—one for $350, dated July 15, 1890, payable to the same bank, and two notes payable to the First National Bank of St. Johnsbury, one for $750, dated June 22, 1886, and one dated June 23, 1889. The sum for which this last note was given does not appear.

On April 15, 1891, Moore gave the defendant, as security, a chattel mortgage on the livery property, and it was recorded on the 18th day of the same month. The description of the property in the mortgage is: "All my livery property consisting of horses, wagons, sleighs, vehicles, harnesses, robes,

blankets, etc., also all horses and other livery property that I may purchase in my business or acquire by exchange." The mortgage is conditioned for the payment of all that the mortgagor then owed the mortgagee, or might thereafter owe him, "by note, book account, or in any other manner," and for the saving of the mortgagee "harmless and indemnified from paying any commercial paper on which he has become or may hereafter become holden in any manner for my (the mortgagor's) benefit as surety, endorser or otherwise."

On May 5, 1891, defendant signed another note with Moore, payable to the Passumpsic Savings Bank, and on March 1, 1900, the three notes given to that bank by Moore with the defendant as signer, as before stated, were merged in a note of that date signed by Moore and by the defendant as surety, for $2,510.75, payable to the bank on demand. This note has not been paid, and, although specified in the conditions of the mortgage assigned to the bank, as one of the debts secured thereby, it has been proved by the bank as an unsecured claim against the bankrupt estate. The defendant signed other notes with Moore from time to time, in renewal and otherwise, payable to the First National Bank.

After deducting payments made on the notes to the last named bank, the aggregate sum due thereon was put into a new note dated Nov. 21, 1892, signed in the same way. This note, amounting to $526.27, was paid by the defendant on June 4, 1900. These notes were all signed by the defendant to assist Moore in carrying on, building up, and equipping his livery stable and livery business, and as between them belonged to Moore to pay.

On March 5, 1900, Moore gave the defendant another chattel mortgage on the livery stock. Later in the same month, this mortgage was assigned by the defendant to the Passump-

sic Savings Bank, by which it has hitherto been held and owned.   On May 7, 1900, one John Ryan, a creditor of Moore, issued his writ against him declaring in general assumpsit for $500 in damages, and caused the livery stock to be attached thereon.   On the 16th day of the same month, the defendant, acting under the advice of his attorney, and with the consent of Moore, took possession under his mortgage of April 15, 1891, of all the livery property then on hand, and on the 11th day of June following, he caused the same to be sold at public auction by a public officer in due form under the provisions of the statute.   By arrangement between Moore's attorney and the defendant's attorney, the property was thus to be sold, and the avails held by the officer in place of the property for the one who should prove to be entitled thereto; but neither Moore nor his attorney consented that the avails might be applied on the defendant's debts.   On the 30th day of June, Moore filed his voluntary petition in bankruptcy, he was adjudged a bankrupt thereon, and the plaintiff was appointed trustee in bankruptcy of the estate, and he is now acting as such

The petition in bankruptcy was filed within four months after the giving of the mortgage assigned to the Passumpsic Savings Bank; hence that mortgage became null and void under the Bankrupt Law of 1898, sec. 67, e.   For the purpose of defeating the effect of defendant's taking possession of the property under his mortgage, the plaintiff brought his petition to the court of bankruptcy, under the provisions of sub-division f of that section, for an order that Ryan's attachment might be preserved as a lien on the property for the benefit of the estate in bankruptcy.   But upon hearing, the petition was dismissed.   Since the attachment was made within four months prior to the filing of the petition in bankruptcy,

the lien created thereby could be preserved only by an order
from that court for such purpose.   Without such order the
attachment, like the last named mortgage, became null and
void.   Sec. 67, f.   With the bank's mortgage and the attach-
ment thus invalidated, the defendant's rights under his mort-
gage of April 15, 1891, stood the same as though there had
been no subsequent mortgage given, nor attachment made.   It
is urged that with the annullment of the attachment, the prop-
erty affected by it passed to the trustee as a part of the estate
of the bankrupt under the express provisions of f.   There
would be more force in this contention were it not for the pro-
vision that by order of the Court, an attachment lien may be
preserved for the benefit of the estate.   If there is no other
lien on the property, there can be no occasion for such order;
for on the dissolution of the attachment the property, unless
exempt, would pass to the trustee anyway.   It is only when
the property for some reason may not otherwise pass to the
trustee as a part of the estate that such an order is necessary.
We think such is the purpose of that provision, and that unless
the lien is thus preserved, the property, as in the case at bar,
may be held upon some other lien and not pass to the trustee.
*In re Sentenne & Green Co.,* 120 Fed. 436.

The question then arises whether the defendant, by virtue
of his mortgage and the taking possession of the property
thereunder, had a lien on the property taken and sold, para-
mount to the rights of the plaintiff as trustee under the bank-
rupt law.   The plaintiff contends that the defendant did not
have a lien valid against creditors under that Act, and he seeks
to recover the amount received by the defendant from the sale
of the property.   The parties to the mortgage are described
therein as of St. Johnsbury, etc.   Beyond what may be in-

ferred from this fact, there is nothing in the mortgage showing where the property was located.

The referee found that at the time this mortgage was given, it was agreed and understood by the parties thereto that the mortgagor should sell or exchange any of the livery stock covered by the mortgage as he desired, and should thereby, and by purchase or otherwise, keep the stock good, so that the defendant's security should not be impaired; and that all after-acquired livery property should be covered by the mortgage as security for the debts specified therein; that pursuant to such understanding and agreement, the mortgagor made sales, purchases, and exchanges of livery stock to such an extent that on May 16, 1900, when the defendant took possession of the property under his mortgage, there only remained two certain horses of the property on hand at the time the mortgage was given; that these sales, exchanges and purchases were made by the mortgagor, sometimes without communication with or advice from the defendant, and frequently after consultation with him; that the livery stock as it existed when defendant took possession of it was all acquired by exchange of the original stock, or with the avails of the old stock sold, or the money derived from the business; and that all the property of which the defendant took possession was acquired by Moore with the full understanding and intent that it should be covered by the defendant's mortgage.

The plaintiff contends that the mortgage is void, because (1) the description of the property in insufficient; (2) in neither the condition nor the affidavit is the description of the debt as specific as the law requires; also that the mortgage was invalid as to the after-acquired property. However the law might be upon these questions if the mortgagor had retained possession of the property until after the filing of the petition

in bankruptcy, there would seem to be but little doubt regarding it as the case stands.

The property expressly described in the mortgage was the mortgagor's livery property, and the after-acquired property was, by the description, all horses and other livery property that he might purchase in his business or acquire by exchange. In principle there is no difference between a mortgage on such livery property with acquisitions by purchase or exchange to keep the property in quality and value equal to what it was when the mortgage is given, and a mortgage on a stock of goods with acquisitions by purchase to keep the stock from depletion by sales in the common course of business. That the mortgage in question is good at common law between the parties to it, and that when the mortgagee took possession of the property under it with the consent of the mortgagor, it became a good and valid mortgage on the property, including that acquired subsequent to the giving of the mortgage, except as against intervening rights of creditors or other third persons, if any, and that such property came under the cover and operation of the mortgage as of its date, are questions too well settled in this State to need further discussion. *Peabody* v. *Landon,* 61 Vt. 318, 15 Am. St. Rep. 903; *Rice's Assignees* v. *Hulett,* 63 Vt. 321; *In re Allen's Estate,* 65 Vt. 392; *Mc-Loud* v. *Wakefield,* 70 Vt. 558.

It is found that when the defendant took possession of the property, he knew that the mortgagor was insolvent, and was considering going into bankruptcy; that he did not intend to perpetrate any actual fraud on the other creditors or any of them; but that he did intend thereby to perfect his lien on the property and make it available for the payment of his debt before other complications by way of attachment or bankruptcy arose. He then understood that Ryan's attachment would

24

probably hold good against his mortgage. There is no find-ing that the thus parting with the possession of the property by the mortgagor was with the purpose on his part to hinder, delay, or defraud his creditors, or any of them. Without a finding to this effect, it cannot be said that there was an in-valid transfer of the property within the provisions of section 67, e, of the bankrupt law. *Sabin* v. *Camp*, 98 Fed. 974.

The plaintiff further contends that such transfer consti-tuted a preference within the meaning of that law. Section 60, subdivision a, declares what shall constitute a preference, and subdivision b provides that if a bankrupt shall have given a preference within four months before the filing of a petition, or after it is filed and before the adjudication, "and the person receiving or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such per-son." It is unnecessary, however, to determine whether the taking possession of the property by the defendant under his mortgage with the consent of the mortgagor was a preference under subdivision a, for if it was, it is not voidable by the trustee, under subdivision b, unless the defendant or his agent had reasonable cause to believe that it was intended thereby to give a preference. *Pirie* v. *Chicago Title and Trust Co.*, 182 U. S. 438, 45 L. ed. 1171.

The mortgage under which defendant acted was given more than seven years before the enactment of the bankrupt law. The case shows that possession was not taken until after the condition was broken, for it is found that at that time there was a balance due defendant on open account for rent over-due of $269.19. As a mortgage under the common law, when the condition was not duly performed, the whole title to the

property vested absolutely at law in the mortgagee, subject to the mortgagor's right in equity to redeem, the same as in the case of a mortgage of lands. 2 Story Eq. Jur., sec. 1030; *Wood* v. *Dudley,* 8 Vt. 430; *Blodgett* v. *Blodgett,* 48 Vt. 32; And the defendant had the right to perfect his title against creditors of the mortgagor by taking possession of the property. *Coty* v. *Barnes,* 20 Vt. 78.

There is no finding that the defendant or his agent had reasonable cause to believe that by the change of possession it was intended to give a preference. This fact must affirmatively appear. We cannot infer it from the other facts reported. *Darby* v. *National Bank,* 57 Vt. 370. The fair construction of the findings is that the parties were but carrying out the provisions of the contract of mortgage as it was well understood between them before the bankrupt act was passed, with a view to their respective rights under the contract rather than that any preference was intended by either.

Nor does the property covered by defendant's mortgage pass to the trustee under the provisions of subdivision f, whereby all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, are deemed null and void in case he is adjudged a bankrupt, and the property affected thereby is deemed wholly discharged and released from such lien and passes to the trustee as a part of the estate.

The question of intent does not arise under these provisions, but to come within them the lien in question must have been obtained through legal proceedings within the prohibited period. It cannot be said that the creation of a lien is the same as the enforcement of one already created. Assuming that the taking and sale of personal property by a public offi-

cer upon a statutory chattel mortgage under the provisions of V. S. 2265-2268, constitutes a legal proceeding within the meaning of the above provisions of the bankrupt law, as was recently held by WHEELER, J., in the matter of *Parker P. Ball,* bankrupt, 123 Fed. 164, it does not follow that the mortgage lien is thereby rendered null and void; for instead of being a lien obtained through such legal proceedings, it is an existing lien by contract enforced by them.

As already seen, the defendant's lien under his mortgage at common law was one that gave him an absolute legal title after forfeiture, which occurred before possession was taken by him. But it was necessary that a change of possession be had to render his title operative against the other creditors of the mortgagor. *Tobias* v. *Francis,* 3 Vt. 425, 23 Am. Dec. 217; *Woodard* v. *Gates,* 9 Vt. 358; *Rice's Assignees* v. *Hulett,* before cited. After forfeiture the defendant had the right to sell the property in satisfaction of his debts. *Wood* v. *Dudley,* before cited; Jones Chat. Mort., sec. 707; *Freeman* v. *Freeman,* 17 N. J. Eq. 44. And the sale, being with the mortgagor's consent, operated as a formal foreclosure of his equitable right of redemption. Jones Chat. Mort., sec. 709.

The construction of section 67 f has recently been under consideration in the case of *Metcalf* v. *Barker,* 187 U. S. 165, 9 Am. B. R. 36. In an opinion delivered by Mr. Chief Justice FULLER, the Court said: "In our opinion, the conclusion to be drawn from this language is that it is the lien created by a levy, or a judgment, or an attachment, or otherwise, that is invalidated and that where the lien is obtained more than four months prior to the filing of the petition, it is not only not to be deemed to be null and void on adjudication, but its validity is recognized. When it is obtained within four months, the property is discharged thereupon but not otherwise. A judg-

ment or decree in enforcement of an otherwise valid pre-existing lien is not the judgment denounced by the statute, which is plainly confined to judgments creating liens.   If this were not so, the date of the acquisition of a lien by attachment or creditor's bill would be entirely immaterial."

Nor is the case of *Wilson* v. *Nelson,* 183 U. S. 191, 46 L. ed. 147, upon which the plaintiff relies, to the contrary. There Nelson borrowed a sum of money before the bankrupt law was enacted, and gave his promissory note therefor, with an irrevocable power of attorney executed by him attached thereto, authorizing any attorney of a Court of record in his name to confess judgment thereon after its maturity.   After the passage of the bankrupt act, the owner of the note caused judgment to be entered upon the note and the warrant of attorney.   Upon this judgment an execution was issued and the same was levied on Nelson's goods, which were subsequently sold, and the proceeds were applied in part payment of the judgment.   These proceedings were wholly without Nelson's knowledge or consent.   More than five days after the levy, but before the sale of the goods, a petition in bankruptcy was filed against Nelson and the sole question before the Court was whether he had committed an act of bankruptcy within the meaning of section 3, cl. 3, of the bankrupt law.   In considering the case, the Court discussed to some extent the provisions of sec. 67, subdivision f.   In that case, unlike the one at bar, no lien existed on the bankrupt's property until one was created by the levy of the execution, which brought it expressly within the terms of subdivision f.   It is there said that the bankrupt act makes the result obtained by the creditor, and not the specific intent of the debtor, the essential fact; and that the levy, which was in a proceeding begun within the four

months, would be dissolved by the adjudication in bankruptcy, because its existence and enforcement would work a preference; and it was held that the debtor, by failing to vacate or discharge the preference within five days before the sale of the property on the execution, committed an act of bankruptcy.

Some or all of the amount due from the mortgagor to the defendant for rent of buildings accrued after the giving of the mortgage, and the plaintiff contends that so much thereof as did thus accrue is not covered by the mortgage, because rent is not a "contemplated loan and liability" within the meaning of that expression in the affidavit attached to the mortgage. But when the defendant is considered as standing upon a mortgage at common law, no affidavit is necessary; and regarding the sufficiency of the description of the debts, obligations, and undertakings, intended to be secured thereby, the rules governing similar questions arising in connection with real estate mortgages are applicable. Under the holdings of this Court in cases involving such mortgages, it is clear that the description in question is sufficient in this regard. *McDaniels* v. *Colvin*, 16 Vt. 300, 42 Am. Dec. 512; *Seymour* v. *Darrow*, 31 Vt. 122; *Soule* v. *Albee*, 31 Vt. 142.

Nor can we agree with the plaintiff's contention that the defendant cannot avail himself of this security to save him harmless and indemnified from paying the note for $2510.75 at the Passumpsic Savings Bank, signed by him as surety, because the defendant's liability thereon is not more specifically described in the mortgage. In this respect the condition of the mortgage is more specific than the one before the Court in *Soule* v. *Albee*. There the condition was, "should also pay all sums that the petitioners or A. G. Soule should become liable to pay for Curtis B. Albee in consequence of signing or otherwise." This condition was held sufficient to cover an agree-

ment whereby the mortgagee, at mortgagor's request, verbally agreed with the mortgagor's debtor, who had been summoned as a trustee in a suit against the mortgagor, that if said debtor would pay his debt to the mortgagor, he, the mortgagee, would pay him whatever judgment should be rendered against him as trustee in that suit.    Whether the description meets the requirements of the law regarding statutory chattel mortgages, we need not inquire.    The defendant cannot be deprived of his security in that behalf until the note at the bank has been paid, or he has in some other manner been fully discharged or released as surety thereon.

In considering the questions before us, we have treated all evidence introduced by the plaintiff, to which defendant excepted, as properly in the case, without regard to its legal admissibility.

*The pro forma judgment for the defendant to recover his costs is affirmed.*